**FOGLIO, Petitioner, v. ALVIS, Warden, Respondent.**

Common Pleas Court, Franklin County.

No. 196808. Decided January 23, 1957.

Petitioner, per se.

William Saxbe, Atty. Genl., John Shoemaker, Asst. Atty. Genl., for respondent.

### OPINION

By LEACH, J.

Petitioner, by this action in habeas corpus, seeks his release from the Ohio Penitentiary to which he was sentenced by the Court of Common Pleas of Cuyahoga County in the April term of 1955, after pleading guilty to two counts of armed robbery (§2903.13 R. C.), such sentences to run concurrently.

The entire contention of the petitioner is to the effect that the "commitment papers" were without the signature of the judge who pronounced sentence, that the sentence therefore was invalid and "that

the State of Ohio and the sentencing Court lost jurisdiction of the subject matter and person of petitioner."

In support of his contention, petitioner cites the fact that the Court of Appeals of this district recently granted an application for a writ of habeas corpus to one Homer Jack Dean, its entry reciting that "the entry of commitment for petitioner, Homer Jack Dean is void and without effect and that he is therefore being illegally detained by respondent, Ralph W. Alvis, Warden." In that case Dean was "remanded to the custody of the Franklin County Sheriff for further proceedings according to law."

Here petitioner asserts not only that he is being illegally detained due to the lack of a signature of the judge on the "commitment papers" but also that he cannot be remanded to Cuyahoga County because he was "placed once in jeopardy and cannot be subjected again for the same offense." Before discussing other aspects of this case, it would be well to lay this latter contention to rest. Obviously, if the Cuyahoga County Common Pleas Court lacked jurisdiction, he was not in jeopardy. It is equally obvious that if petitioner were in jeopardy, such court did have jursidiction.

The record of this case is clear that the Penitentiary officials did not received from Cuyahoga County any papers with reference to petitioner, which were signed by the judge who pronounced sentence, Judge Nicola. Instead, in literal compliance with §2949.12 R. C., the Clerk of Courts furnished to the Sheriff, who delivered into the custody of the respondent "a copy of such sentence which shall clearly describe the offense and designate the sections of the Revised Code under which conviction was had, together with a copy of the indictment." The Clerk certified the same to be "a true copy of said Judgment and Sentence" and further certified that such was taken from the Journal of the Court, referring to the specific volume and page number of such Journal. Apparently, it is the claim of the petitioner that these papers received by the respondent are the "commitment papers" which he contends are of no force and effect in the absence of the signature of Judge Nicola threon.

This claim clearly is without merit. The only papers which the law prescribes to be delivered to the head of the penal institution, are those required by §2949.12 R. C., which are furnished by the clerk. These papers or documents constitute the formal authentication of the authority of the penal officials to accept and retain custody of the prisoner. The statute obviously does not require or provide for the signature of the sentencing judge thereon.

What then is meant by the reference in the entry of the Court of Appeals in the Dean case to "the entry of commitment" which was stated to be "void"? Since there is no statute employing such phraseology, we are somewhat at a loss to know. It is possible that such language was employed because of the fact that the printed form, employed by the Clerk of Courts of this county, in performing his statutory duty of furnishing "a copy of such sentence which shall clearly describe the offense and designate the sections of the Revised Code, under which conviction was had," had printed thereon as a sub-heading,

the words "Journal Entry—Commitment" and below the recitation of the sentence had printed a line, apparently for signature, with the word "Judge" below such line. In the Dean case the name of the trial judge was typed on such line but his signature did not appear thereon. If the action of the Court of Appeals in the Dean case was based on the lack of the signature of the judge on this particular piece of paper received by the penal officials, this case is identical.

To what extent is the action of the Court of Appeals in the Dean case a binding legal precedent on this Court in this case? In that case the attorney for the respondent **conceded** that Dean was entitled to his release from the Penitentiary. Because of such fact, that Court had no occasion to examine carefully into the law or to render any considered decision as to the questions which could have been raised but were not. We, therefore, do not consider the action of the Court of Appeals as being any binding legal precedent in this case. As we have heretofore stated, the papers or documents received by the penal officials in this case were in literal compliance with the requirements of §2949.12 **R. C.** Neither this statute nor any other statute nor any principle of law required the signature of the sentencing judge.

In view of the fact that the petitioner conceded at the hearing in this cause that by the use of the words "commitment papers" in his petition, he had reference to the papers received by the penal officials, we perhaps could terminate this decision at this point and deny the relief sought. However, another legal question is presented, not fully understood by the petitioner, but which we believe must be determined. This is the question of whether petitioner is entitled to his release from confinement in the absence of the signature of the sentencing judge on an entry of sentence. In the hearing in this cause, counsel for respondent conceded that, in accordance with the procedure followed in Cuyahoga County, Judge Nicola **orally** pronounced sentence and judgment and entered such in writing on the bench docket, signing such bench docket, but at no time signed any "journal entry" of sentence and judgment. Such sentence and judgment was then entered on the journal by the clerk.

Here again the basic facts are not distinguishable from the Dean case. In that case, too, the judge, in accordance with the procedure followed in Franklin County, orally pronounced sentence and judgment and entered such in writing on the bench docket after which the sentence and judgment was entered on the journal by the clerk, but at no time did the judge sign any "journal entry" of sentence and judgment. It is possible therefore, that the action of the Court of Appeals in the Dean case was predicated on the theory that there can be no valid sentence and judgment in a criminal case in a common pleas court in the absence of a journal entry signed by the judge. If that was the rationale upon which such action was based, again we are of the opinion that such action is not a binding legal precedent in this case in view of the fact that such action was based on a **concession** of counsel for respondent therein and, in effect, was an agreed entry.

In approaching this problem we believe that it is necessary to keep

in mind the distinction between the journal or an entry made on the journal and a "journal entry" in the sense of a paper signed by the judge. The former is made up and entered by the clerk. The latter, after being signed by the judge, is filed with the clerk as his authority to make a specific entry on the journal. Basically, therefore, the questions presented in this phase of the case are (1) has the clerk any authority to enter the sentence and judgment in the **journal** in the absence of the filing with him of a paper writing, commonly referred to as a "journal entry," signed by the judge, and where such was entered by the clerk in the absence of the filing with him of such a "journal entry" is there a valid sentence and judgment, and (2) even if the clerk had no such authority, would such lack of authority entitle petitioner to release from confinement in an action in **habeas corpus.**

The first question involves a consideration of the **statutory** powers and duties of the clerk with regard to the keeping of such journal and a consideration of the powers and duties of the court, acting through the judge, in sentencing, rendering judgments and supervising and controlling the records kept by the clerk.

Sec. 2303.08 **R. C.**, provides that "The clerk of the court of common pleas shall * * * enter all orders, decrees, judgments and proceedings * * *." Sec. 2303.12 **R. C.**, provides that the clerk "shall keep" a journal. Sec. 2303.14 **R. C.**, provides that the clerk "shall keep the journals * * * appertaining to the court and record its proceedings." The bond of the clerk, provided by §2303.02 **R. C.** is conditioned, among others, "that such clerk shall enter and record all the orders, decrees, judgments, and proceedings of the courts of which he is the clerk." Sec. 2303.26 **R. C.** provides that the clerk "shall exercise and perform the duties enjoined upon him by statute and by the common law; and in the performance of his duties he shall be under the direction of his court."

It is clear that by the terms of these statutes, the clerk not only has the authority but the duty of entering on the journal the orders and judgments of the court. These statutes do not attempt to define the **procedure** by which the clerk will ascertain the fact that such orders or judgments were made by the court but instead provide in broad language that in the performance of such duties, the clerk shall be under the "direction of his court." So far as these statutes are concerned, it is entirely discretionary with the court as to the procedure chosen to insure the accuracy of the entries into the journal by the clerk. While a judgment should not be entered on the journal except in the manner stated by statute, **Craig v. Wemply, 104 Oh St 312, 315,** here the only statutory requirement is that it shall be under the direction of the court.

We are acquainted, of course, with the provisions of §2323.15 **R. C.** which provides that when a trial by jury has been had and a verdict rendered, "a journal entry of judgment in conformity to the verdict shall be approved by the court in writing and filed with the clerk for journalization." Where such statute is applicable the broad discretion of the court in the selection of the procedure for the journalization of a judgment, as provided in §2303.26 **R. C.**, is restricted and the clerk is not authorized to enter the judgment on the journal itself until there

is filed with him such "journal entry." This statute is limited to its terms however. Craig v. Wemply, supra. It can have no application here because (1) there was no trial by jury, there being a guilty plea, and (2) it has application only to civil cases. Sec. 2323.15 R. C. (formerly §11599 GC and §5356 R. S.) was originally enacted in 1853 in an act entitled "an act to establish a code of civil procedure." 51 Ohio Laws, 57.

The code of civil procedure is not applicable to criminal proceedings. Steen v. State, 20 Oh St 333; Benedict v. State, 44 Oh St 679. As a further and more recent indication of legislative intent, we note that in the recodification of the statutes of Ohio into the Revised Code, the General Assembly enacted not only the text of the statutes but also the title and chapter headings. Title 29 is designated as "Crimes—Procedure" and Chapter 2947 as "Judgment; Sentence." This Title and Chapter contain no language similar to that contained in §2323.15 R. C. and have no provisions of any kind purporting to limit the discretion of the court in his direction to the clerk in the performance of his ministerial duty of entering the orders and judgments of the court on the journal.

For the same reason the provisions of §2323.22 R. C. providing for journalization "as of the date of the filing of said entry or of the written direction by the court" have no application. This section too, was originally enacted in 51 Ohio Laws, 57, as a part of the code of civil procedure.

Having concluded that there are no statutes, applicable to criminal cases, which in any way restrict the duty of the clerk to enter the orders and judgment of the court on the journal, we are met with the question of whether such a requirement is intrinsic in judicial process. We conclude that it is not. As stated in 30 Am. Jur. 833, a judgment need not be signed in order to be effective. The signature of the judge is regarded as merely giving the clerk a surer means of correctly entering that which has been adjudged. See also 30 A. L. R. 715.

It is true, of course, that a judgment does not become effective in every sense until it is entered on the journal and that this is true in both civil and criminal cases. It is equally true that where there is a statutory requirement of the signature of the judge as a condition precedent to the entry on the journal and the judgment is entered without such signature, questions may arise as to the validity of such judgment. In the absence of such a statutory requirement, however, we believe that the journal, showing such journal, is conclusive.

This position is supported by the case King v. King, 38 Oh St 370. There the judge made an order in chambers but neither the order nor the journal was signed by the judge. The order was entered on the journal, however, by the clerk. The Supreme Court concluded that the order "was entered on the journal by the direction of the judge is required by statute" and that "the signature of the judge to the order, or journal entry thereof, is not essential to the validity of the order."

In the King case it will be noted that the court referred to "journal entry" in the sense of the entry by the clerk on the journal. In the same way the reference in the case of In the Matter of Fenwick, 110 Oh St 350, to the necessity that a sentence be "journalized" is to such an

entry on the journal itself and the latter case, therefore, has no application to the question of the requirement of the judge's signature, as a condition precedent to rendering judgment.

In the case of Cox v. Fogle, 84 Oh Ap 179, the Court of Appeals of this district held that an oral pronouncement from the bench by a municipal court judge of an order as a specific requirement of probation was of no force and effect "without the preparation and filing of a journal entry." There a "Probation Entry" in the sense of a separate piece of paper, had been signed by the judge but never filed with the clerk. The journal stated merely that the defendant was "placed on probation on condition that he pay a fine of $250 and costs." The Probation Entry contained other conditions, which were never entered on the journal. Thus the Court, in effect, held that the entry into the journal itself is the sole basis for determination of the scope of the order and judgment of the trial court. It should be noted that the entry in the journal in the Cox case, as accepted by the Court of Appeals as being the judgment of the trial court, was prepared by the clerk, without any written direction signed by the trial judge. The Cox case, therefore, cannot be construed as requiring in a criminal case the signature of the judge as a condition precedent to judgment or to the entering of such judgment on the journal.

In further support of the conclusion, reached here, that in the absence of any statutory requirement, judgment may be rendered by entry into the journal without the signature of the judge, either on the journal itself or on a separate piece of paper, often referred to as a "journal entry," see Osborn v. State, 7 Ohio 212, which held that the signature of the judge was not necessary.

As a further indication of the fact that there is no basic and intrinsic principle of judicial process requiring the signature of the judge as a condition precedent to judgment, we note that the duties of the Clerk of the Supreme Court of Ohio, as contained in §2503.11 R. C., are substantially identical to those of the Clerk of the Court of Common Pleas. He is required to "enter and record the orders, judgments, decrees and proceedings of the supreme court." All this he does, as a matter of fact, without any written direction in the sense of a "journal entry" signed by the judges of such court or by any of them. If such a signature be required in the absence of a statutory provision to that effect, it would appear that all cases filed in the Supreme Court are still pending and that no "judgments" have ever been rendered by that court.

Such a contention would be absurd. The function of the Clerk of the Supreme Court in entering and recording the orders and judgments of that court is merely the performance of a ministerial act. The act of the Clerk of the Court of Common Pleas Court likewise is a ministerial act. See Benedict v. State, 44 Oh St 679. In that case the jury in a criminal case was unable to agree and was discharged. This fact was recited on the trial docket by the judge. In making up the journal the clerk omitted the reason for such discharge. At a second trial the defendant claimed double jeopardy. The court then ordered a nunc pro tunc entry and proceeded with the trial on the merits. Such action was upheld by the Supreme Court, the opinion stating at page 685:

"The fact and reason of the action of the court was duly entered upon the court docket, and all that the court could do was done. Judicial action was taken, but there was failure so to make up the journal as to show such action."

In the language of the Benedict case, Judge Nicola here did all that could be done. He performed his judicial function of pronouncing sentence and judgment and entered such on the court docket. The clerk in turn did all he could have done. He performed his ministerial duty of making up the journal by entering thereon such sentence and judgment.

See also **Hocking Valley Ry. Co. v. Cluster Coal and Feed Co., 97 Oh St 140,** wherein it was held that the determination and announcement of the court's conclusion is judicial while the entry by the clerk of such decision is purely ministerial.

We are also mindful of the contention that a sentence is only "pronounced" by some written instrument signed by the judge. We have concluded, heretofore, that there is no basic or intrinsic principle of judicial process, independent of statute, requiring such a writing or signature as a condition precedent to judgment.

The statutes of Ohio relative to the pronouncement of sentence and judgment read as follows:

"Before sentence is pronounced, the defendant must be informed by the court of the verdict of the jury, or the finding of the court, and asked whether he has anything to say as to why judgment should not be pronounced against him." **Sec. 2947.05 R. C.**

"If a convicted defendant does not show sufficient cause as to why judgment should not be pronounced, the court shall pronounce the judgment." **Sec. 2947.07 R. C.**

It will be noted that both the sentence and judgment are "pronounced." It is a basic rule of statutory construction that words of a statute will be construed in their ordinary acceptance and with the meaning commonly attributed to them. **37 O. Jur. 542.** "Pronounce" has its origin in the French word "pronuntiare" which means to proclaim, announce, rehearse, narrate. Other dictionary definitions of pronounce are to utter, declaim, recite, assert, to declare aloud, tell, report, articulate. Certainly, there is nothing implicit in the use of the word "pronounced" which would be indicative of any legislative requirement that the sentence and judgment be "pronounced" in a writing signed by the judge. To the contrary, the ordinary, everyday use of such word would import clear authority to the judge to do exactly what was done here —to orally state from the bench the sentence and judgment of the court.

In Long v. Minto, 158 P. 805, the court said:

"The judgment is rendered when the judge performs the judicial act of pronouncing sentence, and a memorial of that judgment is made when the clerk performs the ministerial act of writing the entry in the journal, 23 Cyc. 835. The judge does his duty when he renders the judgment. The clerk discharges his duty when he enters the judgment in the journal. Having entered the judgment, the clerk gives a certified copy of the entry to the sheriff, who then delivers the body of the

defendant, 'togethetr with a copy of the entry of judgment, to the keeper of such prison.' "

See also Foster v. Zerbst, 92 Fed. (2d) 950; Brice v. King, 137 Fed. (2d) 495; Walden v. Hudspath, 115 Fed. (2d) 558; Watkins v. Merry, 106 Fed. (2d) 360; Smith v. Amrine, 134 P. (2d) 400; Patton v. State, 21 So. (2d) 844; Moore v. State, 97 P. (2d) 925; 15 Am. Jur. 444; and 30 A. L. R. 700.

Even if it be assumed that there be some requirement, unknown to this court, that the sentence and judgment be "pronounced" by a written document signed by the judge or that the clerk has no authority to enter a sentence or judgment on the journal in the absence of some written document signed by the judge, we would still be required to deny plaintiff the relief he seeks in an action in habeas corpus.

Sec. 2725.05 R. C., reads as follows:

"If it appears that a person alleged to be restrained of his liberty is in the custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ of habeas corpus shall not be allowed. If the jurisdiction appears after the writ is allowed, the person shall not be discharged by reason of any informality or defect in the process, judgment, or order."

The issue presented in habeas corpus proceedings does not involve a consideration of the **procedures** followed by the court in rendering judgment or making an order, but only of the **jurisdiction** of the court to render such judgment or make such order. Furthermore, the statute provides that the petitioner "shall not be discharged by reason of any informality or defect in the process, judgment or order." If such a requirement did exist, its omission would be at best an "informality or defect" in the judgment or order. Sentencing is not a game in which the wrong move by the judge means immunity for the prisoner.

Even in those states where there is a statutory requirement of the signature of the judge, such statutes are regarded as directory only, and not as going to the **jurisdiction** of the court. 15 Am. Jur. 105.

In Bailer v. Dowd, 40 N. E. (2d) 325, release from confinement was denied in an action in habeas corpus, even though a statute required such signature, the court stating that the petitioner's theory predicates a void judgment and holding that such judgment was not void but merely irregular. See also Newsom v. Miles, 44 N. E. (2d) 297.

To hold otherwise would constitute a collateral attack which, in effect, would amount to a request to this court, either to ignore or to correct the journal of the Cuyahoga County Common Pleas Court. The journal of that court shows a sentence and judgment. Such journal imports **absolute** verity. See **Shober v. State, 11 Oh Ap 37;** Santo v. State, 17 O. C. C. (n. d.) 110. If such journal is not correct, the trial court is the only court which can correct such error. **Smith v. Bd. of Ed., 27 Oh St 44.** The Court of Common Pleas of Cuyahoga County obviously had **jurisdiction** to render such judgment and this action in **habeas corpus,** because of the provisions of §2725.05 R. C., presents only such jurisdictional question.

For the reasons heretofore stated, we find that petitioner is not entitled to be discharged from custody in the Ohio Penitentiary. He, therefore, is ordered remanded to custody. Entry may be prepared accordingly by counsel for respondent in accordance with our rules of civil procedure and submitted to the court for signature.