[Cite as *Lamb v. Lamb*, 2011-Ohio-2970.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| JANE K. LAMB (nka Dickard) | : | |
| | : | Appellate Case Nos. 24076 |
| Plaintiff-Appellee | : | 23538 |
| | : | |
| v. | : | Trial Court Case No. 92-DM-1074 |
| | : | |
| RICHARD E. LAMB | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations Division) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 17th day of June, 2011.

. . . . . . . . . . .

DAVID M. McNAMEE, Atty. Reg. #0068582, 42 Woodcroft Trail, Suite D, Beavercreek, Ohio 45430
      Attorney for Plaintiff-Appellee

ELIZABETH N. GABA, Atty. Reg. #0063152, 1231 East Broad Street, Columbus, Ohio 43205
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} This case concerns the validity and enforceability of the 1992 decree dissolving Richard Lamb's marriage to Jane Lamb. Pursuant to the separation agreement incorporated into the dissolution decree, Jane sought a Qualified Domestic Relations Order (QDRO) allocating to her a portion of Richard's pension benefits. Richard contends that the decree is

invalid because the decree contains only a rubber stamp of the judge's signature, which this Court, and others, has held is improper.

{¶ 2} The Montgomery County Domestic Relations Court would not allow Richard to collaterally attack the decree now, 18 years after it was entered. We agree with the lower court's decision and affirm its judgment.

## 1. Case History

{¶ 3} In December 1992, after a 23-year marriage, Richard and Jane were divorced. Incorporated into the dissolution decree was their separation agreement, which included a provision dividing Richard's retirement benefits:

{¶ 4} "10. Pensions; Divided Upon Distribution. At the present time, the Husband is the beneficial owner of vested, non-contingent pension rights in the following pension plan: Federal Government. * * *

{¶ 5} "* * * The parties agree, and the Court may order, that Fiduciary shall pay to Wife a specified portion, namely 50% percent [sic], of any and all payments made on account of Husband's interest in said Plan, whether in installments or in gross * * *."

{¶ 6} The dissolution decree was initialed by a magistrate and rubber stamped with the domestic relations court judge's signature.

{¶ 7} In 2006, a year almost to the day before Richard retired in 2007, Jane filed a motion asking the court to determine her portion of Richard's pension benefits. In 2008, a magistrate made a determination and ordered Jane to draft a QDRO accordingly.[1] Richard

---

[1] Although the separation agreement states that Jane is to receive a straight 50%, Jane conceded at a hearing that her portion should be calculated using a coverture fraction, here, 50% of Richard's marital years of service divided by his total years of service.

objected. The domestic relations court overruled his objections and adopted the magistrate's decision. Richard appealed to this Court. We dismissed the appeal for lack of a final appealable order, finding that the order contemplated a calculation of Jane's benefits that had accrued since Richard retired. On remand, the magistrate determined the amount of accrued benefits Richard owed Jane. Richard objected.

{¶ 8}  In May 2009, in a motion to vacate the decree, Richard raised the issue of the decree's validity for the first time. The following month, the domestic relations court entered the QDRO filed by Jane. Richard appealed the QDRO, but a few months later, he moved this Court to stay the appeal and temporarily remand the case to the domestic relations court so that it could decide his motion to vacate. In September 2009, we sustained the motion, suspending the appeal and remanding for the limited purpose of ruling on Richard's motion to vacate. In May 2010, the domestic relations court concluded that the decree is valid and enforceable.

{¶ 9}  Richard appealed. We lifted the stay in the first appeal and consolidated the two appeals, which are now before us.

## 2. The Decree is Valid and Enforceable

{¶ 10} Richard assigns three errors to the lower court. In the first assignment, he argues that the court erred by concluding that the decree was valid and enforceable despite being signed with a rubber-stamp.[2] Richard argues in the second assignment that the court

---

[2] "The trial court erred to the prejudice of Appellant in finding that the Dissolution Decree was valid and enforceable because a judgment entry that bears a rubber-stamp in lieu of the judge's signature is not a final appealable order."

erred by entering the QDRO because he never agreed to the retirement-benefits provision.[3] And in the third assignment of error Richard argues that the QDRO was entered in error also because Jane's claim is barred by the equitable defenses of laches, estoppel, and waiver.[4]

{¶ 11} Civil Rule 58(A), which concerns the entry of judgments, says that, "upon a decision announced, * * * the court shall promptly cause the judgment to be prepared and, the court having signed it, the clerk shall thereupon enter it upon the journal." In *Platt v. Lander* (May 7, 1991), Montgomery App. No. 12371, we held that a rubber stamp of a judge's signature does not satisfy this rule's signature requirement. Several other Ohio appellate courts have held the same. See, e.g., *Flores v. Porter*, Richland App. No. 2006-CA-42, 2007-Ohio-481, at ¶14 ("[T]he trial judge's signature was rubber-stamped on the judgment entry. It therefore does not comply with Rule 58."); *In re Mitchell* (1994), 93 Ohio App.3d 153, 154 ("This court will not accept a rubber stamp in lieu of a judge's signature. Civ.R. 58(A) clearly mandates that once a decision has been announced, the court shall cause the judgment to be prepared and sign the judgment."); *Rescue Temple Church of God v. Jones* (July 1, 1992), Summit App. No. 15412 ("The rubber-stamped facsimile of a judge's signature does not satisfy Civil Rule 58.").

{¶ 12} This rule is not disputed here. What is disputed is the legal effect that such a signature has on the status of a judgment, or in this case decree, to which it is affixed. Richard asserts that it rendered the divorce decree not final. Therefore, he contends, the decree is void.

---

[3]"The trial court erred to the prejudice of Appellant by finding that Appellee was entitled to any of Appellant's retirement because there was no meeting of the minds regarding this provision."

[4]"The trial court erred to the prejudice of Appellant by not finding that Appellee's claims were barred by the doctrines of laches and/or estoppel and/or waiver."

Richard cites no authority nor offers argument to support his assertion that the failure to comply with Civil Rule 58 means the decree is void. "[T]he lack of a signature on a judgment does not constitute a jurisdictional defect." *Brewer v. Gansheimer* (Oct. 5, 2001), Ashtabula App. No. 2001-A-0045. Rather, "[it] is an irregularity or defect which has no effect upon the jurisdiction of the trial court." Id., citing *Foglio v. Alvis* (1957), 75 Ohio L.Abs. 228. There are but two reasons that a judgment is void: "[the judgment] has been imposed by a court that lacks subject-matter jurisdiction over the case or the authority to act." *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, at ¶12 (Citations omitted.). Plainly, the domestic relations court had jurisdiction over Richard and Jane's divorce action and had the authority to enter the divorce decree.

{¶ 13} In response to *Platt*'s holding, Richard contends that he could not have directly appealed the decree because it is not a final, appealable order. See *In re M.W.R.*, Butler App. Nos. CA2007-04-105, CA2007-04-106, 2007-Ohio-6169, at ¶27 ("It is well-established that a judgment entry that is not signed by a trial judge but that bears a rubber stamp in lieu of the judge's signature is not a final appealable order and is thus invalid for appellate purposes."). However, as this court said in *Platt* "* * * we view the final order to be voidable and not void. The appellant having failed to appeal from the order * * * vacating the judgment, the order is final and no longer reviewable by us on direct appeal." *Platt, supra* at pg. 2. Thus, Platt stands for the proposition that the voidable rubber-stamped order becomes final when no appeal is taken. Nevertheless, whether or not Richard could have directly appealed the decree, he did not even try. He is now estopped from challenging the validity of the decree. "'[E]stoppel' is a bar that precludes a person from denying a fact that has become settled by an act of the person

himself. Courts do not need to find that a person had any scienter before applying estoppel. Therefore, estoppel applies when a party acts inconsistent with a claimed right, regardless of whether the person is knowingly acting inconsistent with that right." *Cornerstone Premium Motors, Inc. v. Mosolovich*, Columbiana App. No. 05 CO 48, 2006-Ohio-3523, at *¶*22 (Internal citations omitted.). The lower court here got it exactly right: "If Richard wanted to attack the alleged procedural flaws in the Dissolution decree the proper avenue would have been a direct appeal. He should not now be allowed a collateral attack some 18 years after the fact. If Richard's testimony that he first knew of the retirement provision was in 1995 is to be believed he should have come to the court for relief then. He did not. If Richard's testimony that he first knew of the retirement provision was in 2005 is to be believed he should have come to the court for relief then. He did not." May 3, 2010 Decision and Order, p.5.

**{¶ 14}** The first assignment of error is overruled.

**{¶ 15}** The second assignment of error is also overruled. Since Richard may not challenge the decree, the question of whether he agreed to divide his pension benefits is moot.

**3. Equity Does Not Bar Jane from Receiving Part of Richard's Pension**

**{¶ 16}** In the third assignment of error, Richard contends that Jane should be barred from receiving a portion of his retirement benefits on equitable grounds of laches, waiver, and estoppel because she waited 15 years before asking a court for a QDRO. We disagree. Paragraph 10 of the incorporated separation agreement (quoted above) clearly divides Richard's retirement benefits. Richard began receiving retirement benefits when he retired in 2007. Almost a year to the day before he retired, Jane filed the motion that lead to the present appeal, which, in essence, asked the court for a QDRO. With this motion, Jane was merely

asking–well in advance–for an order implementing a provision of the decree. See *State ex rel. Sullivan v. Ramsey*, 124 Ohio St. 3d 355, 2010-Ohio-252, at ¶19 (saying that "[a] QDRO merely implements the divorce decree") (Citation omitted.). It was not Jane who delayed but Richard. "[E]quity will not aid those who 'slumber on their rights,' or who unreasonably delay the assertion of a right." *Murry v. Watkins*, Stark App. Nos. 2004CA136 and 2004CA139, 2004-Ohio-7053, at ¶23, citing *McPherson v. McPherson* (1950), 153 Ohio St. 82, 91.

{¶ 17} The third assignment of error is overruled.

{¶ 18} The judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN and DONOVAN, JJ, concur.


Copies mailed to:

David M. McNamee
Elizabeth N. Gaba
Hon. Denise L. Cross