[Cite as *Cochenour v. Cochenour*, 2014-Ohio-3128.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| SHARON L. COCHENOUR, | : | |
| | | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA3420 |
| v. | : | |
| | | DECISION AND |
| SPENCER O. COCHENOUR, | : | JUDGMENT ENTRY |
| | | |
| Defendant-Appellant. | : | RELEASED 07/14/2014 |

_____

APPEARANCES:

James R. Kingsley, Circleville, Ohio, for Appellant.

Richard A.L. Piatt and Megan M. Beyland, Columbus, Ohio, for Appellee.

_____

Hoover, J.

{¶ 1} Spencer O. Cochenour ("appellant") appeals the judgment of the Ross County Common Pleas Court, Division of Domestic Relations, which denied his motion to vacate an Agreed Judgment Entry. The Agreed Judgment Entry contains the terms of a post-divorce decree settlement agreement entered between appellant and his ex-wife, Sharon L. Cochenour ("appellee"). Appellant contends that the divorce decree governing this case is void due to a lack of specificity, and thus, the judgment adopting the post-divorce decree settlement agreement is also void. Alternatively, appellant argues that the post-divorce decree settlement agreement is void under law, because the agreement is not supported by adequate consideration.

{¶ 2} We find that any errors or irregularities contained within the divorce decree merely rendered the decree voidable, not void, and because appellant did not raise his concerns by direct appeal or a proper Civ.R. 60(B) motion, the trial court did not have the authority to grant the

relief requested by appellant. Moreover, appellant relied upon the terms of the divorce decree for nearly two and a half years before raising concerns about its validity, and thus such concerns are barred by the doctrine of estoppel. We also find that because appellant consented to the filing of the Agreed Judgment Entry that adopted the post-divorce decree settlement agreement, he could not later collaterally or directly attack the judgment entry. Accordingly, the judgment of the trial court is affirmed.

I. FACTS & PROCEDURAL HISTORY

{¶ 3} As an initial matter, we note that the record transmitted on appeal is incomplete. Appellee filed for divorce on September 26, 2008; and the final divorce decree was entered on December 20, 2010.[1] However, the first filing contained within the appellate record is time-stamped March 18, 2013. Thus, the appellate record is devoid of any certified entries, filings, or transcripts documenting pre-divorce decree proceedings, and is also devoid of a large portion of the certified entries, filings, and transcripts of the post-divorce decree proceedings. The Agreed Judgment Entry memorializing the post-divorce decree settlement agreement that is the subject of appellant's motion to vacate, and the transcript of the hearing on the motion to vacate, are however, contained within the appellate record. "An appellant bears the duty to show error by reference to matters in the record." *Posey v. Posey*, 4th Dist. Ross No. 07CA2968, 2008-Ohio-536, ¶ 17, citing *Knapp v. Edwards Laboratories*, 61 Ohio St.3d 197, 199, 400 N.E.2d 384 (1980). Thus, it is appellant's duty to ensure that a complete record is transmitted on appeal. *Id*. In light of the foregoing, we will review appellant's assignment of error and related arguments to the best of our ability.

---

[1] A file-stamped copy of the divorce decree was attached as an exhibit to a post-divorce decree motion that is contained within the appellate record. Thus, the record does contain an uncertified copy of the divorce decree.

{¶ 4} Based on the record before us, the following facts can be deduced. The parties married on April 9, 1994. [*See* Divorce Decree at 2, attached as exhibit to Record Document 5.] The parties had two children born as issue of the marriage; A.C. and P.C. [*Id*.] Appellee filed a complaint for divorce and appellant counterclaimed for divorce. [*Id*. at 1.] The final divorce decree, entered by the trial court on December 20, 2010, granted the divorce on grounds of incompatibility and "approved and adopted" the "agreement of the parties" which purportedly resolved "most of the issues before the Court." [*Id*. at 2.] The divorce decree also valued the marital real estate at $185,500. [*Id*. at 3.] We note that the divorce decree does not indicate where the "agreement of the parties" can be found in the record, and does not include the agreement as an attachment. Appellant, however, has attached a time-stamped copy of the divorce hearing transcript to the Appendix of his appellate brief, and the transcript contains a recitation of the agreement.[2] We also note that neither party filed a notice of appeal following entry of the divorce decree.

{¶ 5} After moving forward nearly two and a half years to March 26, 2013, the appellate record contains a Memorandum Entry. [*See* Record Document 2.] The hand-written Memorandum Entry, dated March 20, 2013, and signed by the parties and their counsel, as well as by the magistrate and trial judge, purportedly contains the terms of the post-divorce decree settlement agreement that is the subject of appellant's motion to vacate. The trial court officially adopted the Memorandum Entry, and made the settlement agreement an order of the court, by filing an Agreed Judgment Entry on May 2, 2013, which sets forth the post-divorce decree settlement agreement as follows:

---

[2] Generally, appellate courts have held that attaching a complete copy of a proceeding transcript to the appellant's brief is not sufficient to make the purported transcript a part of the appellate record. *State v. McGee*, 2013-Ohio-4165, 996 N.E.2d 1048, ¶ 12 (7th Dist.). However, when the transcript has been previously filed with the trial court, as evidenced by a file stamp, as the case is here, we may consider the transcript on appeal. *Id*.

* * * IT IS THEREFORE ORDERED, ADJUDGED and DECREED as follows:

1. That the parties agree that 273 Brown Chapel Road, Clarksburg, Ohio 43115, shall be refinanced by Plaintiff forthwith;

2. That the parties shall set a closing as soon as practicable;

3. That the Defendant shall receive $15,000 from closing proceeds. Said sum is in satisfaction of the entire division of property;

4. That each party shall keep any retirement accounts in their names;

5. That all medical bills shall be deemed reimbursed through January 1, 2013;

6. That Plaintiff shall receive Quit Claim Deed and proceeds shall be payable from Plaintiff's counsel's trust account to Defendant and his counsel;

7. That counsel shall report to Court by June 15, 2013;

8. That Defendant shall cooperate in the finance process including signing Quit Claim Deed for bank;

9. That all pending Motions shall be dismissed.

IT IS SO ORDERED.

[Record Document 12.]

{¶ 6} On June 25, 2013, appellant filed a "Motion to Vacate the 3/20/13 Memo Entry and the 5/2/13 Agreed Judgment Entry." [Record Document 16.] A hearing on the motion to vacate was held on September 27, 2013. Both appellant and appellee testified at the hearing. A large focus of the testimony dealt with the division of property; especially the proceeds that appellant would be entitled to upon appellee becoming sole owner of the marital residence, and the division of the parties' respective retirement accounts.

{¶ 7} Appellee testified that under the original "agreement" referenced in the divorce decree, she was to retain the marital residence. She testified that the parties further agreed that they would share equally in the home equity; and equity would be calculated by subtracting the mortgage pay-off amount from the value of the home. Appellee further indicated that the parties could not agree on the value of the home, so they left that determination to the court, which ultimately concluded in the divorce decree that the marital residence was worth $185,500. Appellee also testified that the mortgage pay-off amount was approximately $140,000. Thus, under the terms of the agreement referenced in the divorce decree, appellant's share of the home equity equaled approximately $22,750. Appellee also testified that under the divorce decree agreement, the parties' retirement accounts were to be valuated and the combined marital portions were "to be set-off by individual reciprocal QDRO's."[3]

{¶ 8} Appellee further explained how the parties later agreed that appellant would be entitled to only $15,000 from the home equity proceeds, as stated in the 2013 Memorandum Entry and Agreed Judgment Entry. According to appellee, appellant owed her money for payment of their children's medical bills, and he had taken $5,000 worth of personal property that he was not entitled to receive under the divorce decree. Offsetting those amounts from the home equity proceeds totaled $15,000, and according to appellee, the parties agreed that $15,000 was the amount that appellant would receive upon the closing of the marital residence. Appellee also explained that the parties never had their individual retirement accounts professionally valuated, but they agreed to keep their own accounts as stated in the Memorandum Entry and Agreed Judgment Entry, because in their individual estimation, the accounts were relatively equal in value.

---

[3] A review of the divorce hearing transcript attached to appellant's brief corroborates appellee's testimony in regards to the terms of the divorce agreement.

{¶ 9} Appellant testified that he owes appellee approximately $6,000 in medical bills, but he could not account for the remaining difference between the equity amount he is owed under the divorce decree agreement, and the amount listed in the Memorandum Entry and Agreed Judgment Entry. Appellant specifically denied that the parties ever agreed to offset the equity amount by the amount of personal property he received. In fact, appellant testified that he has not received all of his personal property. In regards to the retirement accounts, appellant testified that he never saw a valuation of the retirement accounts, but that the accounts "could never be equal."

{¶ 10} Appellant also testified that he was present when the Memorandum Entry was prepared. He admitted to signing the Memorandum Entry, but stated that he "rushed through it", did not completely read the document, and that he was pressured by his lawyer to sign the document.

{¶ 11} The trial court orally overruled the motion to vacate at the hearing, stating that:

It seems clear to this Court that the Magistrate's Decision which was objected to, by the way, and the Decree of Divorce was put in in [sic] December of 2010, specifically awarded the defendant certain properties. One of those property rights was a one-half interest in the value of the equity in the real estate as determined by appraisal which would occur subsequent to the agreement. The other property right is an interest in the value of the property of the parties combined pension plans or retirement plans. This is both, these are both set forth very clearly in the transcript. And the Decree of Divorce refers to the agreement of the parties set forth on the record. So in December of 2010, this defendant had property rights established by the Decree in a potential QDRO and in the real estate. Then throughout an extremely litigious two and a half more years, we get

to the point, and oh, before we get to the, before we get to the actual Agreed

Judgment Entry which is in dispute, the Decree of Divorce refers to the parties'

agreement, probably was not drafted artfully. The fault lies with the parties, their

previous counsel, the Magistrate and this Court for this mess, and it is a mess, and

I think we all agree. But the Decree referred to the agreement of the parties, the

parties' agreement is on record in the transcript and can be defined. It referred to

the defendant's own proposed sharating [sic] plan, Shared Parenting Plan for the

allocation of parental rights and responsibilities. So this Court finds that it is not a

void Decree in December of 2010, that it does address all issues. And as I've

previously stated, creates two specific property rights we're [sic] at issue now.

Right to receive proceeds from the refinance of the house, and the right to have an

interest in the adjusted retirement plans of the parties.

Now, a pertinent agreement entry that occurred in June of 2012, signed off

by counsel, Mr. Piatt, and Jonathan Schmidt who was appearing at that time for

Spencer Cochenour, signed by the Magistrate, states that the defendant agrees he

owes six thousand forty-one dollars and ninety-four cents. It also states that all

pending motions for contempt shall remain pending. There's nothing in the file

that indicates that in March of 2013, that these pending motions for contempt

were ever withdrawn or ever dismissed. So the file reflects that on March 20th,

2013, this defendant had a motion to cite him for contempt of court pending. He's

acknowledged in his own testimony that he owed about six thousand dollars for

medical bills. He could have been, in the contempt citation which was pending on

March 20th, he could have been jailed. He could have been ordered to pay his

attorney's fees, his wife's attorneys fees, or his ex-wife's attorneys fees. He could have been ordered other financial sanctions. He could have suffered, he was in jeopardy. So he traded. The six thousand dollars, the sanctions that could go along with the motion to cite him for contempt, and he negotiated through competent counsel, nobody's testified, I've heard no expert witness testimony to indicate that Ms. Barrington acted ineffectively here. I've heard no testimony to indicate that the defendant can't read. That he's uneducated. That he was brow-beaten by his attorney. Maybe she said we've got to get this over with, or we've got to move on, but the defendant, there's no evidence to indicate that this defendant is a dunce. He signed the document. The document maybe is a little bit hard to read, but on the two main issues involved here are clear. He was accepting fifteen thousand dollars in exchange for the dismissal of the contempt citation, the satisfaction of the six thousand dollar debt.

I might also add that Section 9 of that agreement says all, and the word all is underlined, all pending motions shall be dismissed. That means the one that Mrs. Barrington filed for the approval of the nunc pro tunc entry. So, if I find that your motion concerning the Agreed Judgment Entry is not well taken, then the Judgment Entry filed December 10th, December of 2010, is also valid. You can, and if, I don't see where you can file an appeal on a motion, on an entry that was filed about three years ago.

I find that the motion is not well taken. Your client is intelligent. He's employed. He can read. He partially read the document. He signed off on the document. The law is clear that if you sign off on the document, you're

responsible for what's in it. I also find that there was adequate consideration, it

may not have been dollar for dollar consideration, but there was far more than no

consideration and there was sufficient consideration for his agreement. And he

didn't modify the property provisions of the Decree. The Decree established that

he had property rights. One was to receive a certain interest in that real estate. He

bargained that away for fifteen thousand dollars. He had certain rights in the

retirement plans. He bargained that away for the dismissal of the contempt and the

fifteen thousand dollars. The motion's not well taken. Its overruled.

[Transcript at 58-62.] The trial court's decision denying the motion to vacate was subsequently

journalized. [*See* Record Document 18.] Appellant then filed his Notice of Appeal.

## II. ASSIGNMENT OF ERROR

{¶ 12} On appeal, appellant asserts the following assignment of error for review:

Assignment of Error:

> DID THE TRIAL COURT COMMIT PREJUDICIAL [ERROR] WHEN IT
> OVERRULED PLAINTIFF'S [SIC] MOTION TO VACATE THE
> SETTLMENT AGREEMENT?

## III. STANDARD OF REVIEW

{¶ 13} While appellant's request to vacate was not couched in terms of a Civ.R. 60(B)

motion, his counsel stated at the September 27, 2013 hearing that the motion was filed pursuant

to Civ.R. 60(B). [Transcript at 1.] However, at the trial level, and in support of his assignment of

error on appeal, appellant contends that both the divorce decree and the post-divorce decree

settlement agreement are void.

{¶ 14} "When a party claims that a judgment is void, that party need not comply with

Civ.R. 60(B). Instead, a trial court retains inherent authority to vacate a void judgment." *Blaine*

*v. Blaine*, 4th Dist. Jackson No. 10CA15, 2011-Ohio-1654, ¶ 17; *see also Pryor v. Pryor*, 4th

Dist. Ross No. 11CA3218, 2012-Ohio-756, ¶¶ 5-8 (treating motion to vacate divorce decree as a motion to set aside a void judgment and not conducting Civ.R. 60(B) analysis). "When a party incorrectly seeks relief under Civ.R. 60(B) in an attempt to vacate a void judgment, a court will 'treat the motion as a common law motion to vacate or set aside the judgment * * *.' " *Blaine* at ¶ 17, quoting *Beachler v. Beachler*, 12th Dist. Preble No. CA2006-03-007, 2007-Ohio-1220, ¶ 19.

{¶ 15} Upon reviewing the motion and the motion-hearing transcript, it is evident that the parties and the trial court evaluated the motion as a motion to vacate a void judgment, rather than focusing on whether appellant had satisfied the requirements of Civ.R. 60(B).

{¶ 16} "The determination of whether a judgment is void presents a question of law." *Patten v. Patten*, 4th Dist. Highland No. 10CA15, 2011-Ohio-4254, ¶ 17, citing *Blaine* at ¶ 19. " 'We review questions of law de novo.' " *State v. Elkins*, 4th Dist. Hocking No. 07CA1, 2008-Ohio-674, ¶ 12, quoting *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

IV. LAW AND ANALYSIS

{¶ 17} Appellant makes two distinct arguments in support of his sole assignment of error. First, appellant contends that the divorce decree is void for lack of specificity and because of the trial court's failure to ensure specificity. In turn, appellant argues that because the divorce decree is invalid, the post-divorce decree settlement agreement is also invalid. Alternatively, appellant contends that the post-divorce decree settlement agreement is void because, in his view, the agreement was not supported by new consideration; but rather "engulfed" the parties' pre-existing duties under the divorce decree. Moreover, appellant argues that the settlement

agreement was not fair and equitable, or otherwise put, appellant contends that if consideration was present, it was not quid pro quo consideration.

*A. The Divorce Decree*

{¶ 18} Appellee asserts that the issue regarding the validity of the divorce decree was not properly before the trial court, because appellant did not file a motion to vacate the divorce decree, but rather filed a motion to vacate the post-divorce decree settlement agreement. We disagree. Appellant's motion and memorandum in support implicitly makes the argument that the divorce decree is void for lack of specificity, and the argument was raised at the motion hearing. [*See* Record Document 16; Transcript at 10-21.] Thus, we must decide whether the errors alleged by appellant render the divorce decree void, or merely voidable.

{¶ 19} " 'The distinction between "void" and "voidable" is crucial. If a judgment is deemed void, it is considered a legal nullity which can be attacked collaterally. Conversely, if a judgment is deemed voidable, it will have the effect of a proper legal order unless its propriety is successfully challenged through a direct attack on the merits.' " *May v. May*, 4th Dist. Adams No. 11CA910, 2012-Ohio-2348, ¶ 31, quoting *State v. Montgomery*, 6th Dist. Huron No. H-02-039, 2003-Ohio-4095, ¶ 10, quoting *Clark v. Wilson*, 11th Dist. Trumbull No. 2000-T-0063, 2000 WL 1050524, *2 (July 28, 2000). "[A] judgment is generally void only when the court rendering the judgment lacks subject-matter jurisdiction or jurisdiction over the parties * * *." *Miller v. Nelson-Miller*, 132 Ohio St.3d 381, 2012-Ohio-2845, 972 N.E.2d 568, ¶12. In contrast, " '[a] voidable judgment is one rendered by a court having jurisdiction and although seemingly valid, is irregular and erroneous.' " *May* at ¶ 31, quoting *Montgomery* at ¶ 9.

{¶ 20} It is well-settled law in Ohio that courts have the inherent authority to vacate a void judgment at any time. *Milton Banking Co. v. Dulaney*, 4th Dist. Jackson No. 09CA10,

2010-Ohio-1907, ¶ 26; *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, 7 N.E.3d 1188, ¶¶ 46, 48. However, "[a] voidable judgment is subject to direct appeal * * * and to the provisions of Civ.R. 60(B). A Civ.R. 60(B) application for relief must be made to the trial court that rendered the judgment from which relief is sought." *Montgomery* at ¶ 9; *see also GMAC Mtge., LLC v. Lee*, 10th Dist. Franklin No. 11AP-796, 2012-Ohio-1157, ¶ 16 (voidable judgment was subject to reversal on appeal or to relief under Civ.R. 60(B)); *Deckerd v. Deckered*, 7th Dist. Columbiana No. 98-CO-59, 1999 WL 439017, *2 (June 24, 1999) (exclusive means to challenge a voidable judgment is Civ.R. 60(B)); *Brown v. Brown*, 2d Dist. Greene No. 90-CA-41, 1991 WL 15986, *3 (Feb. 5, 1991) (because the judgments were voidable and not void the appellant should have sought relief through Civ.R. 60(B)); *Milton Banking Co.* at ¶ 26 (Civ.R. 60(B) provides the exclusive means of vacating voidable judgments); *McIntyre v. Braydich*, 11th Dist. Trumbull No. 96-T-5602, 1997 WL 772936, *3 (Dec. 5, 1997) (a court has no inherent authority to vacate a voidable judgment); *Evans v. Ohio Supreme Court*, 10th Dist. Franklin No. 02AP-736, 2003-Ohio-959, ¶ 17 (voidable judgments may only be challenged on direct appeal); *Mayfield Hts. v. N.K.*, 8th Dist. Cuyahoga No. 93166, 2010-Ohio-909, ¶ 30 (because the judgment was voidable the trial court did not have the authority to vacate it); *Black v. Aristech Chem. Co.*, 4th Dist. Scioto No. 07CA3155, 2008-Ohio-7038, ¶ 19 ("If a judgment is merely voidable, it may not be collaterally attacked.").

{¶ 21} Thus, if the divorce decree is void for lack of specificity, as argued by appellant, then the trial court would possess the inherent authority to vacate the judgment, and any judgment based on it, at any time. If, however, the lack of specificity merely renders the divorce decree voidable, then the trial court would not possess the inherent authority to vacate the decree

pursuant to appellant's motion to vacate for voidness, but rather, the decree could only be challenged by direct appeal or motion pursuant to Civ.R. 60(B).

{¶ 22} In an analogous case, we determined that a divorce decree lacking in specificity renders the decree voidable, not void. *See Karnes v. Karnes*, 4th Dist. Athens No. 95CA1666, 1996 WL 453900 (Aug. 8, 1996). In *Karnes*, the referee who presided over the divorce and custody proceedings recommended that plaintiff be granted a divorce and receive custody of the minor child. *Id*. at *1. The referee's report also recommended that the defendant pay child support. *Id*. The trial court adopted the referee's report, but the divorce decree did not specify which party was granted custody of the minor child or the exact amount of child support due each week. *Id*. Defendant appealed from the divorce decree, but we affirmed the judgment of the trial court. *Id*. Thereafter, the trial court found defendant in contempt for failing to pay child support. *Id*. Defendant again appealed, this time alleging that because the divorce decree did not specify which party had custody of the child or the exact amount of child support due, the original decree and all subsequent entries stemming from the decree were void and unenforceable. *Id*. We held that even if we were to assume that the divorce decree did not contain the appropriate statement of relief, such judgment would be voidable, not void. *Id*. ("A judgment must contain a statement of relief to which a party is entitled. * * * A judgment which does not contain this statement of relief is erroneous and voidable."). Thus, we determined that because the defendant did not raise the specificity issue on his first direct appeal, he was barred from subsequently raising the issue by the doctrine of res judicata. *Id*.

{¶ 23} Here, the trial court admitted that the divorce decree "was not drafted artfully" and "is a mess"; but even if flawed, the divorce decree is not void as appellant contends because the trial court possessed both subject-matter jurisdiction over the divorce and personal

jurisdiction over the parties. Rather, any flaws or irregularities render the decree voidable. *See Karnes*, supra; *see also In re Murphy*, 10 Ohio App.3d 134, 461 N.E.2d 910 (1st Dist.1983), paragraph two of the syllabus ("When a separation agreement omits assets that are both substantial in relative amount and material to an informed and deliberate agreement about an equitable division of the property, such omissions render the dissolution decree voidable, and the decree can be vacated by motion for relief filed under Civ.R. 60(B)(5)."). Had appellant had true concerns regarding the specificity of the divorce decree, he should have filed a timely direct appeal or a motion to vacate the divorce decree pursuant to Civ.R.60(B). A trial court lacks authority to grant relief from a voidable judgment entry outside of those prescribed procedures. *See Walker v. Walker*, 9th Dist. Summit No. 12978, 1987 WL 15591, *5 (Aug. 5, 1987)[4] ("If the judgment was voidable and not appealed, as was the case here, it is not a nullity, it cannot be disregarded, it cannot be attacked collaterally, and it remains in full force and effect."). Thus, the trial court did not err in denying appellant's motion to vacate the post-divorce decree settlement agreement on the basis that the divorce decree was void.

{¶ 24} Moreover, we further conclude that in the instant case, appellant is estopped from challenging the validity of the divorce decree. " ' "[E]stoppel" is a bar that precludes a person from denying a fact that has become settled by an act of the person himself. Courts do not need to find that a person had any scienter before applying estoppel. Therefore, estoppel applies when a party acts inconsistent with a claimed right, regardless of whether the person is knowingly acting inconsistent with that right.' " *Lamb v. Lamb*, 2d Dist. Montgomery No. 92-DM-1074, 2011-Ohio-2970, ¶ 13, quoting *Cornerstone Premium Motors, Inc. v. Mosolovich*, 7th Dist. Columbiana No. 05CO48, 2006-Ohio-3523, ¶ 22. The divorce decree in this case was rendered in December 2010. The alleged flaws and defects were immediately apparent, and appellant

---

[4] Both parties rely upon *Walker* in their appellate briefs, albeit for separate propositions of law.

should have sought relief then. Instead, the parties relied upon the validity of the divorce decree as evidenced by the filing of competing contempt motions, and in appellant's instance, in his decision to remarry. Appellant did not challenge the validity of the decree until two and half years after it was entered, and only after he apparently changed his mind in regards to the post-divorce decree settlement agreement. Put simply, after acting as though the decree was valid for over two years, appellant's attempted collateral attack on the validity of the divorce decree is untimely and improper. *See Miller*, 132 Ohio St.3d 381, 2012-Ohio-2845, 972 N.E.2d 568, at ¶ 18-20 (concluding that wife could not collaterally attack a voidable judgment entry of divorce over three years after judgment was entered, where the defect was easily discoverable, in no way infringed upon the parties' due process rights, and where the parties explicitly relied on the validity of the divorce decree in order to remarry).

{¶ 25} Based on the foregoing, appellant's argument that the original divorce decree is void, and thus the resulting post-divorce decree settlement agreement is also void, is without merit.

*B. The Post-Divorce Decree Settlement Agreement and Related Entries*

{¶ 26} Appellant also contends that the trial court erred in denying his motion to vacate the Memorandum Entry and Agreed Judgment Entry adopting the post-divorce decree settlement agreement, because in his view, the settlement agreement is not a valid contract. Specifically, appellant argues that the post-divorce decree settlement agreement is not supported by any new consideration, but rather encapsulates the pre-existing duties of the parties under the divorce decree. Alternatively, appellant contends that to the extent that the settlement agreement's resolution of the medical bill issue constitutes consideration, it is not quid pro quo consideration. For the reasons set forth below, we find that the trial court did not err in denying the motion.

{¶ 27} In denying appellant's motion to vacate, the trial court determined that the settlement agreement was supported by adequate consideration. However, in our view, such a conclusion need not be reached in the instant case.

{¶ 28} A settlement agreement is a contract designed to terminate a claim by ending litigation and is highly favored in the law. *Barstow v. O.U. Real Estate, III, Inc.*, 4th Dist. Athens No. 01CA49, 2002-Ohio-4989, ¶ 37. "When parties voluntarily enter into an oral settlement agreement in the presence of the court, the agreement constitutes a binding contract." *Id.* Because settlement agreements are enforceable with the same degree of formality and particularity as contracts, they cannot be unilaterally repudiated. *Id.* at ¶ 38. Thus, settlement agreements "can only be set aside for the same reasons that any other contract could be rescinded, such as fraud, duress, or undue influence." *Id.*; *see also Colosimo v. Colosimo*, 8th Dist. Cuyahoga No. 91883, 2009-Ohio-3892, ¶ 11 ("Contracts, including settlement agreements, do not need to be fair and equitable to be binding and enforceable, so long as they are not produced by fraud, duress, overreaching or undue influence.").

{¶ 29} Moreover, " '[t]his court has held that a party may not directly or collaterally attack a consent judgment in the absence of allegations of irregularity or fraud in the procurement of the judgment.' " *Mynes v. Brooks*, 4th Dist. Scioto No. 07CA3185, 2010-Ohio-2126, ¶ 16, quoting *Shanks v. Shanks*, 4th Dist. Ross No. 96CA2252, 1997 WL 114397, *4 (Mar. 10, 1997). This holding is consistent with other courts that have reached similar results in cases where a party attacked an agreed judgment. *Id.* (citing various Ohio court cases facing similar issues). Our holding in *Mynes* and *Shanks* is also consistent with the Ohio Supreme Court's pronouncement that "[i]n order to effect a rescission of a binding settlement agreement entered into in the presence of the court, a party must file a motion to set the agreement aside; and, in the

absence of such motion, a trial court may properly sign a journal entry reflecting the settlement agreement." *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 285 N.E.2d 324 (1972), paragraph two of the syllabus; *see also Smith v. Kroegel*, 4th Dist. Meigs No. 421, 1989 WL 159077, *2 (Dec. 7, 1989), quoting *Bolen v. Young*, 8 Ohio App.3d 36, 37, 455 N.E.2d 1316 (10th Dist.1982) (" 'Where the settlement agreement is arrived at by the parties in open court and preserved by being read into the record or being reduced to writing and filed, then the trial judge may * * * approve a journal entry which accurately reflects the terms of the agreement as his judgment.").

{¶ 30} Here, the now disputed settlement agreement was recited by the parties in open court and agreed upon in open court. The agreement was even preserved by being reduced to writing via the Memorandum Entry. In addition, the Memorandum Entry was filed with the trial court. Both parties and their counsel were present during settlement negotiations; and the Memorandum Entry bears their signatures. Appellant also testified that he signed the Memorandum Entry. Several months thereafter, the trial court approved the Agreed Judgment Entry, which accurately reflects the terms of the settlement agreement, and adopts the agreement as its judgment. Appellant made no attempts to vacate or to set aside the settlement agreement prior to the journalization of the Agreed Judgment Entry. In light of the circumstances, the Agreed Judgment Entry effectively acts as a consent judgment, which as discussed above, may not be directly or collaterally attacked.

{¶ 31} Furthermore, appellant has not alleged any irregularities or fraud in the procurement of the Agreed Judgment Entry. Although the appellant testified that he was pressured to sign the Memorandum Entry by his trial counsel, such testimony does not demonstrate fraud by the appellee. In any event, the trial court apparently did not find appellant's

testimony credible. Thus, pursuant to *Mynes* and *Shanks*, appellant should not have been permitted to challenge the validity of the Agreed Judgment Entry memorializing the settlement agreement of the parties. Accordingly, the trial court did not commit error in denying his motion to vacate.

## V. CONCLUSION

{¶ 32} Based on the foregoing, appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Division of Domestic Relations, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P. J. & Harsha, J.: Concur in Judgment & Opinion.


For the Court

By:_____
                Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.