OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs, and involves a dispute over who owns a particular vehicle between two parties who were defrauded by someone who is not a party to this lawsuit. Plaintiff-Appellant, Cornerstone Premium Motors, Inc., appeals the decision of the Columbiana County Court of Common Pleas that granted summary judgment to Defendant-Appellee, Debra Mosolovich, Trustee of the Mosolovich Family Trust. Cornerstone argues that it was a bona fide purchaser for value without notice of this automobile and that Mosolovich should have known better than to give title to the vehicle to the defrauder.
 {¶ 2} We conclude the trial court erred when granting summary judgment. The Ohio Supreme Court has stated that, absent any question of estoppel arising from an act of the owner, a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice. In this case, there are genuine questions regarding both whether Mosolovich should be estopped from claiming ownership and whether Cornerstone is a bona fide purchaser for value without notice. Thus, each of these issues should be submitted to a jury. Accordingly, the trial court's decision is reversed and this cause is remanded for further proceedings.
 Facts {¶ 3} The Mosolovich Family Trust owned a 2000 Ford Excursion and wanted to sell it. Mosolovich placed an ad which ran for about six months before she was contacted by Brandon Mace. Mace was interested in buying the vehicle and Mosolovich's son drove it from Cleveland to Austintown so Mace could test-drive it. A couple of days later, Mace told Mosolovich he wanted to buy the vehicle.
 {¶ 4} On February 19, 2004, Mosolovich's son again drove the vehicle to Austintown, where Mace gave him a cashier's check for $19,000.00 in exchange for the vehicle and its title. Mosolovich was out of town, so her son sent the check to her overnight. She deposited the check the next day, but a few days later she was informed that it was a counterfeit check. Mosolovich contacted the police to report the theft. The face of the purported cashier's check bore the name and location of two different banks, "Home Federal," Niles, Ohio 44446 and "Farmers National National Bank," Canfield, Ohio 44406.
 {¶ 5} Meanwhile, Mace obtained a certificate of title for the vehicle in the name of "Speedwerks LLC" on February 20, 2004. That title showed that he paid $19,000.00 for the vehicle and $1,425.00 in taxes. The same day, he arrived at Cornerstone, claiming that he had recently bought the vehicle, but that his wife wasn't happy with it; and she wanted to trade it in for a minivan. Mace agreed to trade the vehicle in for a minivan and cash, the total value of which was $15,000.00. Since the Excursion and the minivan were both to be titled in Speedwerks' name, Mace produced a vendor's license for Speedwerks. That vendor's license was obtained about a week before and contained two hand-written changes. Furthermore, the address on the vendor's license was different than the address on the Excursion's title certificate. Despite these discrepancies, Cornerstone completed the sale.
 {¶ 6} After Cornerstone bought the Excursion, the police reported that it had been stolen and impounded it. On April 30, 2004, Cornerstone filed a complaint against Mosolovich, sounding in replevin and conversion, seeking a declaratory judgment naming it as the vehicle's owner as well as money damages. The parties subsequently filed cross-motions for summary judgment. On July 14, 2005, the trial court granted Mosolovich's motion for summary judgment. It concluded that Cornerstone should have known "that there is something wrong about this transaction" and that this prevented it from being a bona fide purchaser for value without notice.
 Standard of Review {¶ 7} Cornerstone argues the following two assignments of error on appeal:
 {¶ 8} "The trial court incorrectly granted summary judgment in favor of the Defendant/Appellee and restored possession of the subject vehicle to Defendant/Appellee. Said summary judgment is against the manifest weight of the evidence because the burden of proof necessary to grant summary judgment had been met by the Plaintiff/Appellant and not the Defendant/Appellee."
 {¶ 9} "The trial court incorrectly found a breach of a standard of care when no evidence was before the court to establish duty or standard of care."
 {¶ 10} In each of these assignments of error, Cornerstone argues the trial court erred when granting summary judgment to Mosolovich. Since these assignments of error address the same issue of law and facts, we will address them together.
 {¶ 11} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court and, therefore, engages in a de novo review. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude that no genuine issue as to any material fact remains to be litigated and that the moving party is entitled to judgment as a matter of law. Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-0186. A fact is material when it affects the outcome of the suit under the applicable substantive law. Russell v.Interim Personnel, Inc. (1999), 135 Ohio App.3d 301, 304.
 {¶ 12} When moving for summary judgment, a party must produce some facts that suggest that a reasonable fact-finder could rule in his or her favor. Brewer v. Cleveland Bd. of Edn. (1997),122 Ohio App.3d 378, 386. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis in original.)Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
 Determining Between Competing Title Claims {¶ 13} In this case, each of the parties was defrauded by Mace and each of the parties wants to possess the vehicle. However, both parties cannot possess the same vehicle. The question, then, becomes whether Mace could transfer good title to Cornerstone.
 {¶ 14} In 1968, the Ohio Supreme Court held when a vehicle is stolen, the original owner retains title to the vehicle unless his actions estop him from doing so. In Hardware Mut. Cas. Co.v. Gall (1968), 15 Ohio St.2d 261, a car was stolen from its owner and subsequently sold to a bona fide purchaser for value without notice of the theft. The original owner filed a replevin action, seeking the return of the vehicle. On appeal, the Ohio Supreme Court decided that "[w]hen one of two innocent persons must suffer from the fraud of a third, the one who made it possible for the fraud to be perpetrated must bear the loss." Id. at 267. Accordingly, it held that "[u]nder the provisions of the Ohio Certificate of Motor Vehicle Title Act, absent any question of estoppel arising from an act of the owner, a thief cannot convey valid title to a stolen motor vehicle to a bona fide purchaser for value without notice, although the certificate of title used in the purported transfer appears valid on its face."Hardware Mut. Cas. Co. v. Gall (1968), 15 Ohio St.3d 261, paragraph three of the syllabus. Since the original owner's actions did not estop him from claiming ownership of the vehicle, the Ohio Supreme Court held that he should be allowed to obtain the vehicle.
 {¶ 15} Since Gall was decided, Ohio's courts have applied its holding to fact patterns similar to the one in this case. For instance, in Loudon Motors, Inc. v. Unified Fire Cas. Co.,
5th Dist. Nos. 2003-CA-00220, 2003-CA-00234, 2004-Ohio-2228, the original owner of a vehicle sold it. After selling the vehicle, it discovered that the check the purchaser used was counterfeit and notified law enforcement. In the meantime, the purchaser obtained a new certificate of title and sold the vehicle to a used car dealership. After a series of transactions, the plaintiff, another used car dealership, obtained a certificate of title to the vehicle. On appeal, the Fifth District concluded that the purchaser committed a theft offense to obtain the vehicle. Accordingly, the court decided that Gall applied. See also Textron Financial Corp. v. Medina Ready-Mix Inc. (Apr. 7, 1995), 5th Dist. No. 94CA40 (There is no reason to distinguish between the loss caused by swindle and the loss caused by theft.).
 {¶ 16} We acknowledge that the Third District recently distinguished Gall in a case containing a fact pattern similar to the one in this case and applied the test codified at R.C.1302.44(A). See Allan Nott Enterprises, Inc. v. Nicholas StarrAuto, LLC, 3rd Dist. No. 1-04-81, 2005-Ohio-1419. However, this was incorrect for two reasons.
 {¶ 17} First, the language within Gall shows that its rule applies to more than cases involving theft without a purported purchase transaction. In Gall, the court justified the rule stated in its syllabus by citing to the common law rule that "[w]hen one of two innocent persons must suffer from the fraud of a third, the one who made it possible for the fraud to be perpetrated must bear the loss." Id. at 267. Relying on this common law principle indicates that the court intended to apply its holding to more than cases involving transactionless thefts. This conclusion is strengthened by the fact that the court made no reference to R.C. 1302.44, even though it existed in basically its present form in 1968.
 {¶ 18} Second, other Ohio Supreme Court precedents show that the Uniform Commercial Code, of which R.C. 1302.44 is a part, does not apply to claims involving motor vehicle ownership. The court has consistently held that the provisions of the Certificate of Motor Vehicle Title Act (CMVTA), which Gall was construing, control the basic aspects of motor vehicle ownership, including the rights of bona fide purchasers. See Smith v.Nationwide Mut. Ins. Co. (1988), 37 Ohio St.3d 150; Hughes v.Al Green, Inc. (1981), 65 Ohio St.2d 110. Moreover, when specifically asked whether the UCC or CMVTA controlled disputes over motor vehicle ownership, the Ohio Supreme Court specifically found that the "Certificate of Motor Vehicle Title Law controls over the provisions of the Uniform Commercial Code." Saturn ofKings Automall, Inc. v. Mike Albert Leasing, Inc.,92 Ohio St.3d 512, 2001-Ohio-1274, syllabus.
 {¶ 19} Accordingly, when determining who retains title to the vehicle in this case, we will use the test the Ohio Supreme Court gave in Gall, rather than the one stated in R.C. 1302.44(A).
 Estoppel {¶ 20} Under Gall, the original owner retains title to the vehicle, even against a bona fide purchaser without notice, unless his actions estop him from claiming title. Gall at syllabus. Cornerstone argues that Mosolovich should be estopped from claiming ownership because she accepted a check which was "clearly counterfeit on its face." After reviewing the evidence submitted in support of the motions for summary judgment, we conclude there is a genuine issue of material fact regarding whether Mosolovich should be estopped from claiming ownership, based on the appearance of the purported cashier's check presented by Mace.
 {¶ 21} Although Gall states that an original owner can be estopped from claiming ownership, it does not address what actions could lead to estoppel. However, the concept of estoppel is familiar and later courts addressed this issue in various fact patterns.
 {¶ 22} "`[E]stoppel' is a bar that precludes a person from denying a fact that has become settled by an act of the person himself." Mark-It Place Foods, Inc. v. New Plan Excel RealtyTrust, 156 Ohio App.3d 65, 2004-Ohio-0411, at ¶ 49, citingSanborn v. Sanborn (1922), 106 Ohio St. 641, 647. Courts do not need to find that a person had any scienter before applying estoppel. First Federal Sav. Loan Ass'n of Toledo v. Perry'sLanding, Inc. (1983), 11 Ohio App.3d 135, 144. Therefore, estoppel applies when a party acts inconsistent with a claimed right, regardless of whether the person is knowingly acting inconsistent with that right. Natl. City Bank v. Rini,162 Ohio App.3d 662, 2005-Ohio-4041, at ¶ 24.
 {¶ 23} In a few cases similar to this one, Ohio appellate courts have been asked whether an original owner is estopped from claiming ownership of a vehicle. For example, in Lyon Motors,Inc. v. Superior Dodge, Inc. (July 11, 1986), 2nd Dist. No. 1154, the court found that transferring possession and a certificate of title without waiting for a purchaser's check to clear was not sufficient to prove estoppel. "This was not a sound business practice but does not rise to the level of an act which requires estoppel of Lyons' right to possession of the Datsun." Id. at 2. Likewise, the original owner is not estopped from claiming ownership due to his silence, inaction, and delay in asserting his title to property when the owner is under duress or undue influence not to make such an assertion. Amezcua v.Zamarelli (June 19, 1992), 11th Dist. No. 91-T-4515.
 {¶ 24} In contrast, when a purchaser delays buying a vehicle and then uses a purported cashier's check which misspells the word "forty," then there is a genuine issue regarding whether the original owner is estopped from claiming ownership. LoudonMotors at ¶ 59. The same holds true if the original owner handed the purchaser a certificate of title endorsed in blank. StateFarm Auto Ins. Co. v. Valentine (1971), 29 Ohio App.2d 174, 180.
 {¶ 25} Under the facts of this case, we cannot decide whether, as a matter of law, Mosolovich should be estopped from claiming ownership. A reasonable fact-finder could conclude that Mosolovich should have suspected that the purported cashier's check that was used to pay for the vehicle was a bad check. First, the check contains the names of two different banks, "Home Federal" and "Farmers National National Bank." The check does not list the address of either bank, and gives a different city and zip code as the location of each bank. Second, the check states that it is void for an amount over $19,000.00 in small print along the top, which is the exact amount for which the check is written. A reasonable fact-finder may be able to conclude that Mosolovich may have been able to prevent the fraud if she or her son had noticed these discrepancies.
 {¶ 26} However, there are also facts which would support a conclusion that Mosolovich should not be estopped. For instance, her son saw the check and did not suspect that it was fraudulent. She did not suspect that the check was fraudulent when she saw it, and the bank did not immediately deny the check as fraudulent. Instead, it waited about a week before informing her that the check was a bad check. Furthermore, Mosolovich contacted the police the day she found out the check was bad, thereby trying to prevent further fraud at her earliest opportunity.
 {¶ 27} Given these facts, we conclude that this is an issue best left to a jury to decide. When making this determination, a jury must consider all the circumstances surrounding the transaction to determine whether Mosolovich acted inconsistently with her right to claim that she was innocently defrauded by Mace. If a reasonable person acting in the same situation could have prevented the fraud, then Mosolovich should be estopped from claiming ownership.
 Bona Fide Purchaser {¶ 28} Under Gall, a bona fide purchaser for value without notice can receive good title to a motor vehicle if the original owner could have prevented the fraud. The trial court concluded that Cornerstone was not a bona fide purchaser for value without notice and, thus, that it could not receive good title to the vehicle from Mace. After reviewing the evidence, we conclude that there is a genuine issue regarding whether Cornerstone is a bona fide purchaser for value without notice.
 {¶ 29} In order for a person to qualify as a bona fide purchaser for value, he must not have notice of any adverse claims. Groza-Vance v. Vance, 162 Ohio App.3d 510,2005-Ohio-3815, at ¶ 33. Such notice may be actual or constructive. Union S. L. Assn. v. McDonough (1995),101 Ohio App.3d 273, 276-277. A party will be deemed to have constructive notice of an adverse claim if he has knowledge of facts which would induce a prudent person to make an inquiry by which he would have or could have obtained knowledge of the adverse claim.The Wayne Building Loan Co. of Wooster v. Yarborough (1967),11 Ohio St.2d 195, 202; Thames v. Asia's Janitorial Serv., Inc.
(1992), 81 Ohio App.3d 579, 587.
 {¶ 30} When determining whether a particular purchaser had notice of the possibility of an adverse claim, courts have looked to both the facts available to the purchaser at the time of the transaction and that person's experience with those kinds of transactions. For instance, in Hightower v. Reiger (Oct. 6, 1988), 8th Dist. No. 54447, the principle player on behalf of a company purchasing property had a lot of experience in real estate transactions. The property being purchased was sold by the original owners because they had been fraudulently induced to transfer via a quit-claim deed. The property was then transferred via another quit-claim deed to the seller. The appellate court concluded that this purchaser was on notice that someone else may have a competing ownership claim because of irregularities in the contracts and the chain of title. For instance, the court noted that the property was being sold for significantly less than its worth and that the fact that the two previous sales were both by quit-claim deed should have, in light of his experience, notified the purchaser that he should further inquirie as to the status of the title for the property.
 {¶ 31} This case is similar to Hightower since there may have been reasons to question whether Mace had valid title to the vehicle. However, Mace offered potentially legitimate explanations for each of these facts. First, Mace sold the car to Cornerstone for $5,425.00 less than the price he paid for it the day before. At first blush, it appears this may raise questions about the transaction in the mind of a reasonably prudent person. However, Mace explained to Cornerstone that his wife was extremely unhappy with the vehicle because she found it difficult to drive and preferred a minivan and appeared to be affluent. Thus, this fact may or may not raise a question in a reasonably prudent person's mind.
 {¶ 32} Second, Mace was titling the vehicles in the name of Speedwerks, LLC, a business which Mace said he owned, but Mace intended them for personal use. Furthermore, Mace asked that the check for the vehicle be made out to him personally, rather than Speedwerks. However, Cornerstone's president's testimony showed that he and his son used to drive cars titled to Cornerstone as their personal vehicles. Furthermore, he testified that this was "not completely out of the ordinary" to issue a personal check to someone who was titling a car under a business's name. Thus, these issues also may or may not raise a question in a reasonably prudent person's mind.
 {¶ 33} Third, the Speedwerks vendor's license contained two different hand alterations and the address on it was different than the address on the certificate of title, even though the Speekwerks vendor's license was only about one week old. However, Mace explained that he had to alter the license because of misspellings ("Speedworks" rather than Speedwerks as the business name and "Sr." instead of St. in the address). No one from Cornerstone testified that they noticed that the addresses were different.
 {¶ 34} Because Mace explained many of the facts which could raise questions in the mind of a reasonably prudent person, we conclude that there is a genuine issue regarding whether Cornerstone was a bona fide purchaser for value without notice.
 Conclusion {¶ 35} In conclusion, there are genuine issues of material fact regarding both whether Mosolovich should be estopped from claiming ownership and whether Cornerstone is a bona fide purchaser for value without notice. Accordingly, the judgment of the trial court granting summary judgment to Mosolovich is reversed and this cause is remanded to the trial court for further proceedings.
Donofrio, P.J., concurs.
Vukovich, J., concurs.