[Cite as *Johnston v. Shale Play Land Servs., Inc. & Taurus Corp. & Andrews*, 2024-Ohio-5934.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

CELLIS JOHNSTON,

Plaintiff-Appellant,

v.

SHALE PLAY LAND SERVICES, INC. AND
THE TAURUS CORPORATION AND
JASON ANDREWS,

Defendants-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 JE 0003

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 22-CV-192

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. James G. Bordas III*, Bordas & Bordas, PLLC, for Plaintiff-Appellant and

*Atty. Joshua E. O'Farrell*, *Atty. Jude B. Streb, Atty. Justin S. Greenfelder,* Buckingham,
Doolittle & Burroughs, LLC, for Defendant-Appellee.

Dated: December 17, 2024

**Robb, P.J.**

**{¶1}** Plaintiff-Appellant Cellis Johnston appeals the decision of the Jefferson County Common Pleas Court granting summary judgment in favor of Defendant-Appellee The Taurus Corporation, who purchased mineral rights from Defendants Shale Play Land Services, Inc. and Jason Andrews ("the defaulting defendants"). Appellant and her husband signed a deed granting those minerals to Shale Play and signed a purchase agreement allowing the purchase to be paid for over time.

**{¶2}** Appellant says the defaulting defendants promised to record the purchase agreement but failed to do so when recording the deed and failed to complete the payments called for by the purchase agreement. She argues this constituted fraud in the execution, which doctrine would render the deed void (rather than merely voidable) and thus immune from a bona fide purchaser argument by Taurus.

**{¶3}** Appellant claims the trial court failed to construe the reasonable inferences in her favor on whether there was a meeting of the minds when she sold her mineral rights and contends the default judgment entered against the defaulting defendants established the purchase of her mineral rights was void. She contends the trial court erred by concluding the defaulting defendants committed fraud in the inducement resulting in a voidable judgment (which passes title to a bona fide purchaser) rather than a void judgment (which does not). Alternatively, Appellant argues the court erred in finding Taurus was a bona fide purchaser as a matter of law, arguing there were factual issues on constructive notice. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

**{¶4}** Appellant Cellis Johnston and her now-deceased spouse (William Johnston) owned mineral rights to almost 114 acres in Jefferson County (after selling the surface and reserving the minerals in 2016). On April 8, 2020, they signed a general warranty deed conveying these mineral rights to Shale Play. Their signatures were notarized (with the notarial jurat referencing their execution of the "within deed"). The deed was recorded the same day. (Vol. 1413, Pg. 121-125).

**{¶5}** Also on April 8, 2020, a two-page purchase agreement was signed by the Johnstons and by Jason Andrews as president of Shale Play. The notary signed it as

well. This agreement recited Shale Play was purchasing the oil and gas rights and royalties from the Johnstons and all future royalty checks would be paid to Shale Play. The purchase price of $800,000 was to be paid in quarterly installments.

**{¶6}** According to Appellant, Shale Play did not timely tender the July 15, 2020 payment, which was to be $75,000. Shale Play made an untimely partial payment of $40,000 to the Johnstons on August 31, 2020.

**{¶7}** Around the same time, Andrews repaid the Johnstons $20,000 that he borrowed from them at the time he purchased their minerals. A notation after the signatures on the purchase agreement memorialized the $20,000 loan to be repaid in July 2020, and Andrews resigned the agreement after this notation.

**{¶8}** On September 3, 2020, a deed was recorded wherein Shale Play conveyed the mineral rights to Taurus. (Vol. 1435, Pg. 914-917). The deed was executed by Andrews as president of Shale Play on August 22, 2020 and delivered to Taurus a few days later.

**{¶9}** Emails from August 14, 2020 show Andrews contacted Taurus offering to sell the minerals for $1.6 million and then for "closer to at least $1 mill[ion]." There was a discussion on market enhancement costs and price forecasts relevant to the minerals, which were under production and paying royalties. On August 20, Andrews asked for $600,000, and Taurus increased a $400,000 counteroffer to $450,000, which was accepted.

**{¶10}** On June 6, 2022, Appellant filed a complaint against Shale Play, serving process on Andrews as the company's president. On November 8, 2022, Appellant filed an amended complaint adding Andrews as an individual defendant with allegations he was the alter ego of Shale Play whose veil should be pierced. The amended complaint asserted claims for fraud, breach of contract, and unjust enrichment against Andrews and Shale Play and sought punitive damages, interest, and attorney fees. The fraud was said to be misleading Appellant into executing a general warranty deed for mineral rights when this was not necessary for Shale Play to obtain royalties and misrepresenting Shale Play's intent to pay pursuant to the purchase agreement.

**{¶11}** The amended complaint also added Taurus as a defendant on claims for declaratory judgment, quiet title, and rescission of the Shale Play Deed and thus the

subsequent Taurus Deed. It was claimed the Johnston's April 2020 mineral rights deed was void ab initio as it was procured through fraud. Taurus filed a timely answer denying the deed was void and asserting Taurus was a bona fide purchaser.

**{¶12}** Appellant filed a motion for default judgment against Shale Play and Andrews, which the court granted. (5/11/23 Mot.; 5/24/23 Order). Initially, the court concluded the default judgment meant the deed was void. However, when it was pointed out the motion was not filed against or applicable to Taurus, the court vacated the order and scheduled a hearing. (6/21/23 Order).

**{¶13}** On July 10, 2023, the court granted default judgment against only Shale Play and Andrews and resolved all issues against them due to their failure to answer. The court emphasized Taurus was not in default and was free to litigate all issues affecting it, including those the defaulting defendants lost by default. Thereafter, depositions were filed after testimony was provided by Appellant and Robert Payne, the president of Taurus.

**{¶14}** Cross-motions for summary judgment were filed by Taurus and Appellant. Taurus argued Appellant was alleging fraud in the inducement by the defaulting defendants, not fraud in the execution. Arguing the deed was therefore merely voidable (not void), it was urged the deed remained valid as to a bona fide purchaser like Taurus.

**{¶15}** Appellant's summary judgment motion argued Andrews committed fraud in the execution (rendering the deed void) by presenting the purchase agreement and the deed as a "packet of documents" and indicating he would record the packet. She pointed to her affidavit and parts of her deposition for the following factual allegations: the "packet of documents" presented to her and her husband included the purchase agreement and the deed; before they signed, Andrews said "all documents would be filed in the county recorder's office together"; and she would not have signed the deed if she knew he would only file the deed with the recorder's office and refrain from filing the purchase agreement.

**{¶16}** Appellant's response to Taurus' motion for summary judgment said the bona fide purchaser argument required a factual inquiry on whether Taurus had constructive notice of facts that would induce a prudent person to inquire further on whether there was an adverse claim to the property. Portions of the deposition of Taurus's president were cited on the fast negotiations and the company's standard

practices. In reply, Taurus asserted the equitable doctrine of constructive notice was inapplicable because the recording statute governed.

{¶17} On November 7, 2023, the court granted summary judgment in favor of Taurus declaring Appellant was not entitled to quiet title and Taurus was so entitled. Initially, the court noted certain items cast doubt on Appellant's claim about the recording promise, including that she did not raise it in the complaint even though it became the centerpiece of her argument and the documents did not indicate they were a single document and in fact were separately signed. Nevertheless, the court assumed, for summary judgment purposes, the promise to record was made by the defaulting defendants.

{¶18} After finding the fraudulent promise was "easily" categorized as fraud in the inducement rather than fraud in the execution, the court made the following observation: "The promise to record both documents is the same. Both promises, to pay and record, are promises of future conduct did not change the nature of the documents that were signed." The court pointed out the failure to record one document was not akin to removing pages from a deed before recording and further explained:

> the Deed itself was exactly what it purported to be and was exactly what the Johnstons knew and intended it to be. The fraud did not occur at the signing table within the documents being signed. The fraud occurred, perhaps at the signing table, but with respect to what Shale Play and Andrews promised to do . . . The Deed was the Deed and was exactly what Plaintiff thought it was. It was recorded in its entirety with no modifications. The Agreement is still the Agreement and is exactly what the Johnstons thought they were signing.

(11/7/23 J.E.). Having concluded the transaction did not involve fraud in the execution (and the deed was thus not void), the court found Taurus was a bona fide purchaser for value. After discussing Appellant's argument on what Taurus could have done to discover her equitable claim, the court concluded Taurus was not required to do anything beyond assuring the record title was clear. Finally, the judgment instructed Taurus to prepare a final order suitable for recording.

{¶19} In the subsequent order, the court reiterated the summary judgment for Taurus on all of Appellant's claims against Taurus and declared Taurus the only owner with Appellant having no right to title or possession of the oil and gas. The court stayed the case on any claim for damages against the defaulting defendants and found there was no just reason for delaying an appeal pursuant to Civ.R. 54(B). (1/9/24 J.E.). Appellant filed a timely notice of appeal.

<u>SUMMARY JUDGMENT</u>

<u>ASSIGNMENT OF ERROR ONE</u>

{¶20} Appellant sets forth three assignments of error, the first of which states:

"THE TRIAL COURT COMMITTED REVERSIBLE ERRORS OF LAW AND/OR FACT IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT TAURUS CORPORATION AND DENYING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF CELLIS JOHNSTON."

{¶21} Summary judgment is warranted when there remain no genuine issues of material fact for trial and where, after construing the evidence most strongly in favor of the non-movant, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The initial burden of showing there is no genuine issue of material fact rests upon the movant. *Byrd v. Smith*, 2006-Ohio-3455, ¶ 10, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294 (1996). Thereafter, a reciprocal burden arises in the non-movant, who may not rest on mere allegations or denials in their pleadings but must respond with specific facts showing a genuine issue of material fact remains. *Id.*, citing Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).

{¶22} Although courts are cautioned to construe the evidence in favor of the nonmoving party, summary judgment is not to be discouraged where the non-movant fails to respond with evidence supporting the essentials of his claim. *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 269 (1993). Notably, the material issues genuinely in dispute in each case depend on the applicable substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Byrd* at ¶ 12.

<u>Case No. 24 JE 0003</u>

{¶23} In the case of contracts, deeds, or other written instruments, the construction of the writing is a matter of law reviewed de novo. *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576 (1998). If the terms of the writing are clear and unambiguous, the court is compelled to give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978). Nonetheless, fraudulent misrepresentations may be actionable in seeking to have a written instrument declared void or voidable, as discussed in the next assignment of error.

{¶24} One of the arguments presented in this assignment of error is "the trial court failed to effectuate the proper remedy arising from Shale Play and Jason Andrews's default." Emphasizing that a default judgment results in admissions by the defaulting defendants, Appellant claims the allegations in her complaint about those defendants' actions must be accepted as proven and the facts regarding her transaction "have nothing to do with Taurus." She concludes the allegations admitted by the defaulting defendants show fraud in the execution and thus a void transaction (rather than a voidable transaction subject to a bona fide purchaser defense), which is the issue in the next assignment of error.

{¶25} Taurus responds by pointing to cases reversing a default judgment in a declaratory judgment action for quiet title where some parties who asserted rights in the property were not in default. *Zelek v. Tomlinson*, 2021-Ohio-3973, ¶ 12-14 (11th Dist.) ("by quieting title in the [plaintiffs] with respect to any right or interest the defaulting defendants may claim and by declaring [the appellant's] leases with those parties null and void, the trial court has effectively predetermined the ultimate issue in the matter as to the competing claims of the [plaintiffs] and the leasing defendants, as well as [the appellant's] leasehold interests"), citing *Wampum Hardware Co. v. Moss*, 2015-Ohio-2564, ¶ 17, 29-31 (5th Dist.) (default judgment should not have been granted in a declaratory judgment action where competing claims were pending on ownership of the mineral rights).

{¶26} The Ohio Supreme Court has adopted the position that "[t]he default of one defendant, although an admission by him of the allegations of the complaint, does not operate as an admission of such allegation as against a contesting co-defendant." *Archacki v. Greater Cleveland Regional Transit Auth.*, 8 Ohio St.3d 13, 14-15 (1983)

(adopting the appellate court's citation of law from other states), quoting *Dade County v. Lambert*, 334 So.2d 844, 847 (Fla.App. 1976). Accordingly, a non-defaulting defendant has the right to defend against the plaintiff's case in subsequent proceedings. *Id.* at 15. Appellant's reply brief acknowledges this right to defend with valid defenses.

**{¶27}** We additionally point out the default judgment was entered long before the summary judgment proceedings and was on an amended complaint that did not mention the allegation about a recording misrepresentation. When arguing the trial court failed to construe the evidence in her favor, Appellant's brief cites her amended complaint as alleging fraud via Andrews misrepresenting that Shale Play would pay for the minerals under the terms of the purchase agreement *but cites her motion for summary judgment* as alleging a misrepresentation by Andrews about the future recording of the purchase agreement.

**{¶28}** On this point, Taurus' brief calls attention to the fact that Appellant's amended complaint (and the original complaint) did not set forth the allegation of the defaulting defendants' fraudulent promise to record the purchase agreement with the deed. Appellant's reply brief says it was irrelevant that the complaint failed to specifically use the term "fraud in the execution" because it alleged the deed was "void ab initio." However, this is not the point being made by Taurus; the point is the complaint failed to state with particularity the circumstance surrounding the fraud now being asserted.

**{¶29}** In a complaint alleging fraud, the circumstances surrounding the fraud must be pled with particularity. Civ.R. 9(B). In accordance, the complaint must specify the content of the false representation (along with the time and place). *Fed. Natl. Mtge. Assn. v. Brown*, 2017-Ohio-9237, ¶ 30 (7th Dist.) (upholding a dismissal for failure to plead the fraud claim with particularity), citing *Barnes v. Res. Energy Expl.*, 2016-Ohio-4805, ¶ 22, 25 (7th Dist.) ("the trial court did not err in refusing to consider the fraud allegations raised for the first time in response to summary judgment").

**{¶30}** Taurus pointed out this pleading failure in its October 20, 2023 response to Appellant's summary judgment motion. The trial court noted how the complaint and the amended complaint "make no mention of the recording fraud which has now become the centerpiece of Plaintiff's claim." As Appellant's reply brief points out, the trial court did not then expressly rule, in the alternative, that summary judgment was proper due to a

pleading of insufficiency under Civ.R. 9(B).  We also note the brief filed by Taurus on appeal does not seem to present Appellant's omission from the complaint as dispositive of the entire appeal or present a Civ.R. 9(B) waiver argument but merely uses the omission as a response to Appellant's argument on the effect of the default judgment.  (T. Br. at 12, 14).  Still, the pleading failure was evident and was discussed in the summary judgment filings.

**{¶31}** Nevertheless, we proceed to address Appellant's other appellate arguments.   Under this assignment of error, Appellant additionally argues the trial court improperly attributed intent to her based on the language of the writings instead of adopting her subjective belief.   Appellant contends the court failed to construe all reasonable inferences in her favor (as the non-movant) regarding her transaction with Shale Play and Andrews.  "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Indus., Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993).

**{¶32}**  Appellant says Andrews induced her to sign the deed by presenting it as an integrated packet of documents containing the purchase agreement and saying he would record the entire packet.  She points to her deposition testimony stating the packet contained multiple pages and Andrews "separated it apparently when we weren't around." She also points to the following claim in her affidavit:  "I would not have signed the deed on April 8, 2020 were it not included within the installment contract that described what he owed to us.  I would not have signed the deed had I known that Jason Andrews would not file the installment contract with the deed at the county recorder."

**{¶33}** She argues the question of whether the fraud committed by Andrews prevented a meeting of the minds turns on a credibility determination.  She then claims the trial court improperly weighed her credibility on this issue when the trial court made the following observations:  "The Deed was the Deed and was exactly what Plaintiff thought it was.  It was recorded in its entirety with no modifications.  The Agreement is still the Agreement and is exactly what the Johnstons thought they were signing.  Both documents were and remain exactly what the Johnstons believed them to be."  She also believes the court construed the evidence against her when stating, "there is nothing in

the Deed nor the Agreement that indicates that they form a single document as opposed to two documents relating to the same transaction."

**{¶34}** As to the latter argument, this was merely an observation based on a plain reading of the documents. A deed signed separately from a purchase agreement is a common practice and existed in this case. Each document was complete and separately signed and dated by the Johnstons; each was signed separately by a notary. Andrews signed the purchase agreement after the Johnstons and separately signed the personal loan notation (under the initial signatures); as expected, he did not sign the deed (as he was the grantee of the property). The distinct nature of the documents was readily ascertainable on the face of each separately or if considered together. The legal ramification of these facts is the topic of the next assignment of error.

**{¶35}** Regarding Appellant's claim that Andrews presented the documents as a packet and Appellant relied on his promise to record them all, the trial court recognized the following: "reasonable minds could come to different conclusions with respect to the alleged promise that both documents would be recorded"; "the Court cannot determine whether or not the promise was actually made"; and "the Court assumes without deciding that the fraudulent promise to record both documents was made." When discussing the deed and the agreement, the trial court was not disbelieving Appellant's testimony. Rather, the court was explaining Appellant intended to sign the deed and was aware of its contents, which remained unchanged from what Appellant signed, and explaining Appellant intended to sign the purchase agreement and was aware of its contents, which remained unchanged from what Appellant signed.

**{¶36}** Contrary to Appellant's contention, the trial court was applying the law to the facts alleged by Appellant, which it assumed to be true. Whether the application of the law to the facts was correct is discussed next.

<u>ASSIGNMENT OF ERROR TWO</u>

**{¶37}** Appellant's second assignment of error contends:

"THE TRIAL COURT COMMITTED REVERSIBLE ERRORS OF LAW AND/OR FACT IN CONCLUDING THAT THE DEFAULTING DEFENDANTS WERE ONLY RESPONSIBLE FOR COMMITTING FRAUD IN THE INDUCEMENT RESULTING IN THE PURCHASE AGREEMENTS AND DEEDS BEING MERELY VOIDABLE RATHER

THAN SUCH DEFENDANTS BEING ALSO RESPONSIBLE FOR FRAUD IN THE EXECUTION RESULTING IN THE PURCHASE AGREEMENTS AND DEEDS BEING VOID."

**{¶38}** When a party alleges fraud in the procurement of a contract, the situation may constitute (1) fraud in the execution (also called fraud in the factum) or (2) fraud in the inducement. *Kight v. Miller*, 2017-Ohio-5714, ¶ 35 (7th Dist.), citing *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13 (1990). Fraud in the execution results in a void agreement, whereas fraud in the inducement results in a voidable agreement. *Haller* at 13-14.

**{¶39}** Appellant emphasizes how a deed that is void due to fraud in the execution is not subject to a bona fide purchaser defense by the current holder of title, citing *Thompson on Real Property*, § 82.12 (2023) and 4 Am.Jur.2d, Alteration of Instruments, § 3. Taurus does not contest this principle. S*ee* Restatement of the Law 2d, Contracts, § 163, Comment c (1981) ("a good faith purchaser may acquire good title to property if he takes it from one who obtained voidable title by misrepresentation but not if he takes it from one who obtained 'void title' by misrepresentation").

**{¶40}** On the other side of the coin, Appellant acknowledges an instrument that is voidable due to fraud in the inducement will remain effective where property has been transferred to a bona fide purchaser. *See Colorado Coal & Iron Co. v. United States*, 123 U.S. 307, 310 (1887) (fraud committed against the United States for falsely claiming land had settlements or improvements made the transaction subject to cancellation but was not the type of fraud precluding a bona fide purchase defense).

**{¶41}** A written instrument is obtained by fraud in the execution "where an intentional act or misrepresentation of one party precludes a meeting of the minds concerning the nature or character of the purported agreement." *Haller*, 50 Ohio St.3d at 13. If a device, trick, or want of capacity produces a lack of knowledge of the nature of the instrument or a lack of intent to sign the writing, then there was no meeting of the minds. *Id.*, citing *Picklesimer v. Baltimore & Ohio RR. Co.*, 151 Ohio St. 1, 5 (1949). "Fraud in the execution exists where the charging party engaged in some trick or device to procure the signature of the party to be charged on an instrument which she did not intend to give, such as where there is a surreptitious substitution of one paper for another at signing." *Kight* at ¶ 37, citing *Perry v. M. O'Neil & Co.*, 78 Ohio St. 200, 209-210 (1908)

(further examples include misreading a contract to an illiterate party or obtaining a signature from a party under anesthesia). This "fraud in the factum" means the party could not ascertain the nature of the document signed due to fraud by the other party during the execution. *Id.* at ¶ 38.

**{¶42}** Distinctly, in a case of fraud in the inducement, "the party to be charged admits she signed the instrument" but complains her decision to sign was induced by the other party's fraudulent misrepresentation. *Id.*, citing *Haller* at 14. Examples of fraud in the inducement include where a party signs a release based on a misrepresentation of the extent of her injuries, signs a contract after the value of the consideration was misrepresented, or signs an instrument under duress or coercion. *Id.* Where a party was able to understand the nature and consequences of the document signed but was induced to sign by a fraudulent misrepresentation, the document may be voidable due to fraud in the inducement; however, it would not be void ab initio. *Id.*

**{¶43}** "An agreement is void when a party has been fraudulently prevented from knowing that he or she has signed a release or its contents, and is merely voidable when the party alleges fraud or misrepresentation as to the facts inducing the party to settle." *Berry v. Javitch, Block & Rathbone, L.L.P.*, 2010-Ohio-5772, ¶ 24 (and the fraudulent inducement required a tender back of the proceeds in order to sue for rescission). "A person cannot void an instrument by stating he was misled into signing a document different from what he intended if he could have known the truth by reading it." *Kight* at ¶ 35, citing *Haller* at 14 (a release is not void for fraud in the execution where there was a misrepresentation of the contents of a release but the releasor failed to take the opportunity to read and understand the document before execution).

**{¶44}** As explained in a case cited by Appellant, there is no fraud in the execution if the executing party had knowledge or a reasonable opportunity to obtain knowledge of the character of the agreement or its essential terms. *See Connors v. Fawn Min. Corp.,* 30 F.3d 483, 490 (3d Cir.1994)*; see also Osin v. Johnson,* 243 F.2d 653, 655-656 (D.C.Cir.1957) (where the seller intended to execute a deed in reliance on the purchaser's promise to record all documents, including the deed of trust securing a note, the federal appellate court rejected an argument of fraud in the execution by concluding the fraud did not give rise to a claim superior to the bona fide purchasers).

Case No. 24 JE 0003

**{¶45}** Appellant's argument focuses on her allegation that the defaulting defendants fraudulently misrepresented that the purchase agreement would be recorded with the deed. Appellant claims this false representation affirmatively altered the "nature of the transaction" involving the executed documents because an unrecorded purchase agreement gives no public notice of Shale Play's continuing indebtedness to the Johnstons. Emphasizing the two documents were presented as a packet representing one transaction, she equates the situation to the extraction of pages from a deed before recording in order to alter the nature of the agreement and prevent a meeting of the minds. She characterizes the defaulting defendants' promise and failure to record the agreement as altering the nature of the transaction, claiming the removal of the purchase agreement from the packet prior to recording essentially omitted material terms. She frames the trial court's decision as the sanctioning of the fraud perpetrated by Andrews when he recorded a "false conveyance instrument."

**{¶46}** Appellant emphasizes the deposition testimony of the president of Taurus, who indicated a subsequent purchaser would have had notice of a security obligation if the Johnstons filed a deed of trust or a memorandum of agreement. (Payne Depo. 54). Noting Taurus regularly dealt with sellers with outstanding obligations on mineral rights (such as royalty loans), this witness said if the Johnstons had filed record of documentation evidencing the defaulting defendants' continuing payment obligation, then Taurus would have been "alerted to the fact that there's an obligation to pay, and pursued that." (Payne Depo. 57-58). He surmised if the purchase agreement had been recorded, Taurus would have investigated it. He indicated Taurus would typically walk away or renegotiate in such cases but suggested further negotiations would have been unlikely here, as Taurus offered much less than what the defaulting defendants owed under the purchase agreement. (Payne Depo. 59-60). Although this witness noted he was not a lawyer, Appellant concludes this testimony must be taken to mean the recording of the purchase agreement would have legally secured the property (in addition to providing notice). Appellant cites this testimony here in anticipation that Taurus will argue the failure to record the agreement was immaterial, as it was not a mortgage or other security interest. However, Taurus does not specify such an argument on appeal.

{¶47} Taurus' response brief states Appellant's factual allegations present a classic case of fraud in the inducement. It is pointed out the deed was executed by the Johnstons separately from the purchase agreement, notarized separately from the purchase agreement, and recorded in its entirety. It is urged the deed and the purchase agreement were separate and distinct documents on their face, and Appellant signed them without requiring their terms to incorporate each other or require a recordation of the purchase agreement in order to ensure a security interest. Taurus states the terms of both instruments remained the same and were not altered or omitted. As additional support for the argument that a lack of a recorded purchase agreement did not render the deed void ab initio, Taurus notes the Johnstons could have recorded the agreement any time after the deed was recorded had the Johnstons checked the record. (It is noted there were four plus months between the recording of the deed from the Johnstons to Shale Play and the recording of the deed from Shale Play to Taurus).

{¶48} Initially, we observe a judge's decision to legally label a misrepresentation as fraud in the inducement is not the sanctioning of a fraudulent scheme by the defaulting defendants, who remain responsible to Appellant. The situation alleged in this case is not equivalent to the false reading of a document to a visually impaired or anesthetized person; nor is it akin to the substitution of documents when a party turns their head between reading and signing. *See, e.g., Kight*, 2017-Ohio-5714, at ¶ 35 (7th Dist.) (where the grantor alleged she read and intended to sign a document but the other party switched the documents just prior to her signature after letting her out at the door of the notary and parking the car); *Ulrich v. McDonough*, 89 Ohio App. 178, 180 (6th Dist.1950) (jury question as to whether a release was void where the plaintiff was struck by a vehicle, could not read due to the condition of his eyes, was told by the insurance adjuster the document to be signed merely allowed the payment of medical bills).

{¶49} There was no "want of capacity" by the Johnstons or the employment of a "trick" to procure a signature on a writing whose contents were unknown or nature unknowable as a result of the trick. *See Haller*, 50 Ohio St.3d at 13. We note the fact the alleged fraud involved a "material" misrepresentation does not remove the case from the realm of fraudulent inducement, as fraud in the inducement involves "a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the

plaintiff relied upon that misrepresentation to her detriment." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502 (1998).

{¶50} The fraudulent misrepresentation of the defaulting defendants appears to constitute fraud in the inducement rather than fraud in the execution because "[t]he fraud relates not to the nature or purport of the [contract], but to the facts inducing its execution." *Haller*, 50 Ohio St.3d at 14 ("where there is mere misrepresentation by one party of the contents of a release, the agreement is not void for fraud in the factum when the releasor has an opportunity to read and understand the document before execution"). As the trial court observed, Appellant's testimony indicated she intended to sign the purchase agreement as written and she intended to sign the deed as written.

{¶51} The written terms of both documents remained unchanged from what Appellant read. No pages of the deed were altered, substituted, or extracted before it was recorded.[1] Contrary to Appellant's framing of the argument, the recording of the deed without a simultaneous recording of a copy of the purchase agreement does not transform the situation into the recordation of a different instrument. Accordingly, we conclude the presentation of a complete deed for recording without also recording a purchase agreement on indebtedness as orally promised does not render the deed void ab initio. Rather, the allegations constituted fraudulent inducement in the signing of the deed, which is subject to the claim of a bona fide purchaser. This assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

{¶52} Appellant's third assignment of error provides:

"THE TRIAL COURT COMMITTED REVERSIBLE ERRORS OF LAW AND/OR FACT IN CONCLUDING THAT DEFENDANT TAURUS CORPORATION WAS AS A MATTER OF LAW A BONA FIDE PURCHASER WHICH ACTED IN GOOD FAITH AND PERFORMED ITS DUE DILIGENCE CONCERNING THE TRANSACTIONS AT ISSUE."

{¶53} Appellant conditionally presents this argument in case we overrule the prior assignment of error and conclude the alleged fraud does not constitute fraud in the execution and thus is subject to the claim of a bona fide purchaser.

---

[1] Procedurally, a mortgage is not physically recorded as part of, or attached to a deed transferred during a sale; rather, it is expected to be recorded separately just after the deed is recorded.

Case No. 24 JE 0003

**{¶54}** Historically, where a plaintiff clothed a fraudster "with the insignia of title" and "one of two innocent persons must suffer by the fraud of a third, [then] he who first trusted such third person, and placed in his hands the means which enabled him to commit the wrong, must bear the loss." *Dean v. Yates*, 22 Ohio St. 388, 396 (1872); *see also Farmers Nat. Bank of Salem v. Teeters*, 31 Ohio St. 36, 38 (1876) ("a bona fide purchaser of a debtor's property from a fraudulent vendee, without notice of the fraud, or of the rights of the creditors, acquires an equity unaffected by the fraud, is too well settled to need the citation of authority"). A bona fide purchaser "acquires legal title to real estate for valuable consideration, in good faith, and without knowledge or notice of another's equitable interest in that property." *Swallie v. Rousenberg*, 2010-Ohio-4573, ¶ 24 (7th Dist.), citing *Shaker Corlett Land Co. v. Cleveland*, 139 Ohio St. 536 (1952), paragraph three of the syllabus.

**{¶55}** Appellant states a bona fide purchaser defense is fact-driven and often inappropriate for summary judgment. She questions whether the trial court misapplied the burden of proof, urging the burden was on Taurus as the party asserting bona fide purchaser status, citing *Antill v. Antill*, 1984 WL 3504 (4th Dist. June 4, 1984) (referring to the burden at trial for a defense). Appellant also argues the court erred in applying the constructive notice doctrine, citing a case broadly observing, "Notice of adverse claims may be actual or constructive." *Tonito's, Inc. v. S&J Ents., Inc.*, 2010-Ohio-776, ¶ 17 (8th Dist.) (but where the purchaser knew about a failed sale and the resulting pending litigation). Appellant then asks this court to apply the following definition of constructive notice: "A party will be deemed to have constructive notice of an adverse claim if he has knowledge of facts that would induce a prudent person to make an inquiry by which he would have or could have obtained knowledge of the adverse claim." *Id.*, citing *The Wayne Bldg. & Loan Co. v. Yarborough*, 11 Ohio St.2d 195, 202 (1967) (qualifying its holding by stating, "absent the influence of a statute, such as a recording act" in a case involving a mechanic's lien and an unrecordable agreement)[2] and *Thames v. Asia's*

---

[2] In this case cited by Appellant, the Ohio Supreme Court agreed with its prior case finding bona fide purchaser status where a statute provided the unrecorded deed was fraudulent and "the record gave no constructive notice to one otherwise a bona fide purchaser without notice, because the only recorded instrument the other party could rely on was out of the purchaser's chain of title, and the purchaser had a right to rely on a record chain complete in his grantor." *Wayne Bldg.*, 11 Ohio St.2d at 211, citing *Sternberger v. Ragland*, 57 Ohio St. 148 (1897).

*Janitorial Serv., Inc.*, 81 Ohio App.3d 579, 587 (6th Dist. 1992) (specifically explaining this equitable doctrine of constructive notice was not applicable where the recording statute applied).

**{¶56}** Factually, Appellant says Taurus was a sophisticated buyer of mineral rights in multiple states. She complains Taurus, instead of making a hasty purchase, should have been suspicious of Andrews who ended up agreeing to accept $450,000 even though he originally asked Taurus for $1.6 million. She notes the Taurus website speaks of its research on the tax appraisals while pointing out a form for use by the auditor's office shows the defaulting defendants purchased the property for $800,000.[3] She believes Taurus should have been curious about the price of the last sale of the mineral rights before making an offer and knowledge of the price paid months earlier would have alerted Taurus that this was a suspicious "fire sale."

**{¶57}** Appellant concludes these were facts that would induce a prudent person to make inquiries by which the person would have or could have obtained knowledge of an adverse claim. She says the trial court presumed bona fide purchaser status from the title search and argues a clear title search cannot be the whole defense or constructive notice would be a meaningless doctrine.

**{¶58}** Taurus relies on the title search showing no encumbrances on the mineral rights. Appellant acknowledged at deposition that she knew of no evidence showing Taurus was aware of Shale Play's outstanding obligation to her. Appellant's amended complaint acknowledged Taurus paid valuable consideration of $450,000 for the mineral rights. In case we were to reach the equitable doctrine of constructive notice, Taurus also points out the deed to Taurus warranted the title was unencumbered and there were no claims pending or threatened.

**{¶59}** Taurus additionally confirmed with the operator of the drilling unit that it was in fact Shale Play who was being paid the royalties on the producing minerals. Taurus points out a seller of mineral rights starting a negotiation with a high number is standard technique and hasty sales are extremely common considering the volatile nature of price

---

[3] She also complains Shale Play's continuing obligation to the Johnstons was not listed by Andrews in this form showing the sale price for the auditor's use.

in the oil and gas industry. It was explained the offer made by Taurus was dependent on an internal calculation involving a production and decline curve based on quantity (mcf), price predictions, and the resulting time until full recoupment of the purchase price. Taurus concludes the facts outside of the recorded title are not indicative of prior fraud.

**{¶60}** In any event, Taurus argues Ohio is clear that the buyer is charged with constructive knowledge only as it relates to encumbrances that are part of the public record. Taurus concludes where (as here) a recording statute applies, the equitable constructive notice doctrine (implying actual knowledge from facts outside the title that should induce inquiry) does not apply; instead, it is only the record that serves as constructive knowledge in such a situation. Under the cited recording statute,

> All deeds, land contracts referred to in division (A)(21) of section 317.08 of the Revised Code, and instruments of writing properly executed for the conveyance or encumbrance of lands, tenements, or hereditaments, other than as provided in division (C) of this section and section 5301.23 of the Revised Code, shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

R.C. 5301.25(A); *see also* R.C. 5301.23 (requiring the recording of all properly executed mortgages, and the omission of the mortgagee's address "shall not affect the validity of the instrument or render it ineffective for purposes of constructive notice").

**{¶61}** It has been observed, "Pursuant to this statutory provision, a bona fide purchaser for value is bound by an encumbrance upon land only if he has constructive or actual knowledge of the encumbrance." *Tiller v. Hinton*, 19 Ohio St.3d 66, 68 (1985). However, as explained by the Court in a later case, the *Tiller* Court discussed only items in the recorded chain of title when determining the purchaser had no constructive notice. *Emrick v. Mutlicon Builders, Inc.,* 57 Ohio St.3d 107,109 (1991).

**{¶62}** On the meaning of knowledge as used in R.C. 5301.25(A), the Supreme Court in *Emrick* reaffirmed the traditional rule:

> [W]hen it appears that the party was a purchaser for value it is not a defense in support of a claim based on an unrecorded deed to show that he took title under circumstances which ought to have excited apprehension and inquiry in the mind of a prudent and reasonable man. No other view will give effect to the statute. Its words make absence of knowledge of the release at the time of the purchase the test; not absence of that which might induce inquiry. A holding which would substitute constructive notice, in the absence of a record, for actual knowledge, would clearly violate this statute . . . The burden of showing such actual knowledge, therefore, was on the [party seeking to enforce the unrecorded encumbrance.]

*Id.* quoting Varwig v. Cleveland, Cincinnati, Chicago & St. Louis RR. Co., 54 Ohio St. 455, 468 (1896).

**{¶63}** Accordingly, where the document containing the contested land restriction was subject to the cited recording statute but unrecorded, the *Emrick* Court concluded "an actual knowledge standard must be applied." *Id.* (which the person seeking to enforce the unrecorded instrument had the burden to prove by clear and convincing evidence).

**{¶64}** This was explained in the *Thames* case cited by Taurus below and on appeal; the case was also cited in the *Tonitos* utilized by Appellant. In *Thames,* the Sixth District explained there were two categories of constructive notice: (1) the common law or equitable rule implying knowledge of a prior encumbrance upon a purchaser who knows facts which would have induced a prudent person to inquiry and such inquiry could have provided knowledge of the encumbrance; and (2) the legal rule providing that the proper recording of instruments recited in R.C. 5301.25(A) constitutes constructive notice to a subsequent purchaser, whether or not he reviewed it. *Thames*, 81 Ohio App.3d at 587. It was observed the "equitable constructive-notice rule, however, has only been applied in Ohio in the absence of a recording statute" and the *Tiller* Court's reference to constructive knowledge referred "to the rule that a record serves as constructive knowledge, not the equitable rule that actual knowledge will be implied from knowledge of facts outside the title record which induces inquiry." *Id.* at 587-588, citing *Emrick*, *Wayne Bldg.*, and *Sternberger.*

Case No. 24 JE 0003

**{¶65}** Accordingly, applying only the second type of constructive notice due to the applicability of the recording statute, the trial court properly found as a matter of law that Taurus lacked constructive notice of the unrecorded security interest claimed by Appellant. There was no indication or allegation of actual notice that the Johnstons were owed installments under a purchase agreement. Appellant's response to Taurus's summary judgment motion argued there remained a genuine issue on constructive notice by using the equitable doctrine of constructive notice. However, said doctrine is not applicable here. In accordance, the trial court did not err in concluding Taurus had no actual or constructive notice of Appellant's claim and was a bona fide purchaser with title to the mineral rights free and clear of Appellant's claim. This assignment of error is overruled.

**{¶66}** For the foregoing reasons, the trial court's decision granting summary judgment to Taurus is affirmed.


Waite, J., concurs.

Hanni, J., dissent with dissenting opinion.

Hanni, J., dissenting.

**{¶67}** With regard and respect to my colleagues, I must dissent from the majority opinion. I would find that a genuine issue of material fact exists as to whether Taurus was a bona fide purchaser. Therefore, I would find merit with Appellant's third assignment of error, reverse the trial court's judgment, and remand for further proceedings.

**{¶68}** A "bona fide purchaser" acquires legal title to real estate (1) for valuable consideration, (2) in good faith, and (3) without knowledge or notice of another's equitable interest in that property. *Swallie v. Rousenberg*, 2010-Ohio-4573, ¶ 24 (7th Dist.), citing *Bergholtz Coal Holding Co. v. Dunning*, 2006-Ohio-3401, ¶ 32 (11th Dist.); *Shaker Corlett Land Co. v. Cleveland*, 139 Ohio St. 536 (1942), at paragraph three of the syllabus.

**{¶69}** This Court discussed notice as applied to a bona fide purchaser consideration:

> In order for a person to qualify as a bona fide purchaser for value, he must not have notice of any adverse claims. *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, at ¶ 33. Such notice may be actual or constructive. *Union S. & L. Assn. v. McDonough* (1995), 101 Ohio App.3d 273, 276-277. A party will be deemed to have constructive notice of an adverse claim if he has knowledge of facts which would induce a prudent person to make an inquiry by which he would have or could have obtained knowledge of the adverse claim. *The Wayne Building & Loan Co. of Wooster v. Yarborough* (1967), 11 Ohio St.2d 195, 202; *Thames v. Asia's Janitorial Serv., Inc.* (1992), 81 Ohio App.3d 579, 587.

Cornerstone Premium Motors, Inc. v. Mosolovich, 2006-Ohio-3523, ¶ 29 (7th Dist.).

**{¶70}** We further explained that "[w]hen determining whether a particular purchaser had notice of the possibility of an adverse claim, courts have looked to both the facts available to the purchaser at the time of the transaction and that person's experience with those kinds of transactions." *Id.* at ¶ 30. We then went on to examine an Eighth District case where it was known that the principle player on behalf of a company purchasing property had significant experience in real estate transactions. *Id.*, citing *Hightower v. Reiger*, 1988 WL 112525 (8th Dist. Oct. 6, 1988). We pointed out that

the appellate court found significant the fact that the property being purchased was sold by the original owners because they had been fraudulently induced to transfer via a quit-claim deed and it was then transferred via another quit-claim deed. *Id.* We remarked: "the court noted that the property was being sold for significantly less than its worth and that the fact that the two previous sales were both by quit-claim deed should have, in light of his experience, notified the purchaser that he should further inquire as to the status of the title for the property." *Id.*

{¶71} In *Oxford Mining Co., LLC v. Ohio Gathering Co., LLC*, 2020-Ohio-1363, ¶ 59-60 (7th Dist.), this Court further discussed notice in terms of a real estate purchase:

Subsequently, in discussing the burden of inquiry in a real estate purchase, the Supreme Court adopted the following position on actual notice not proved by direct evidence but inferred from circumstances:

if the party obtains knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put a reasonably prudent man upon inquiry, then it may be a legitimate, and perhaps even necessary, inference that he acquired the further information which constitutes actual notice. *** Finally, if it appears that the party has knowledge or information of facts sufficient to put a prudent man upon inquiry, and that he wholly neglects to make an inquiry, or having begun it fails to prosecute it in a reasonable manner, then, also, the inference of actual notice is necessary and absolute.

*G/GM Real Estate Corp. v. Susse Chalet Motor Lodge of Ohio, Inc.*, 61 Ohio St.3d 375, 380, 575 N.E.2d 141 (1991), quoting *Cambridge Production Credit Assn. v. Patrick*, 140 Ohio St. 521, 532-533, 45 N.E.2d 751 (1942), quoting 2 Pomeroy's Equity Jurisprudence, Section 597, 619 (5th Ed.).

Accordingly, a purchaser cannot refuse to inquire when the reasonableness of making inquiry is naturally suggested by known circumstances. *G/GM Real Estate*, 61 Ohio St.3d at 380 (refusing to allow purchaser to rescind

based on recorded memorandum of lease, which was missing statutory elements, where purchaser failed to view the lease); *Cambridge Production Credit*, 140 Ohio St. at 532-533 (finding actual notice as a matter of law where there was knowledge of the existence of a mortgage but no inquiry was made into its specifics).

**{¶72}** Applying the above to the facts of this case, I would conclude that a genuine issue of material fact exists here as to whether Taurus may have had actual or constructive notice of Appellant's claim.

**{¶73}** The deed transferring the mineral rights from Appellant and her husband to the defaulting defendants was recorded on April 8, 2020. Shale Play's president contacted Taurus on August 14, 2020, offering to sell the mineral rights first for $1.6 million and then for $1 million. Shale Play then asked for $600,000 for the mineral rights. Soon thereafter Shale Play accepted Taurus's offer of $450,000. The deed transferring the mineral rights from Shale Play to Taurus was executed on August 22, 2020, just over four months after the sale from Appellant and her husband.

**{¶74}** Taurus is a sophisticated buyer of mineral rights in multiple states. The quick turnaround sale and significant price drop could have been enough to raise a red flag for a company regularly engaged in the buying and selling of mineral interests that there could be a prior right in conflict with the interest it was purchasing. I would find that under the circumstances of this case, a genuine issue of material fact existed to preclude summary judgment.

[Cite as *Johnston v. Shale Play Land Servs., Inc. & Taurus Corp. & Andrews*, 2024-Ohio-5934.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**